1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    Lane Labbe', et al.,                        No. 2:20-cv-01975-KJM-DMC

12                        Plaintiffs,             ORDER

13          v.

14    Dometic Corporation, et al.,

15                        Defendants.

16

17          The plaintiffs allege Dometic Corporation's refrigerators are defective fire hazards, and

18    they allege it has attempted to conceal this fact for many years.  Dometic moves to dismiss the

19    plaintiffs' fraud claims, to dismiss their request for punitive damages, and to strike several

20    allegations from the complaint.  **The motion to dismiss is denied, and the motion to strike is**

21    **granted in part.**

22    **I.      ALLEGATIONS**

23          Lane and Lisa Labbe' operate a horse boarding and training facility on their ranch in

24    Quincy, California.  Compl. ¶ 54, Notice of Removal Ex. B, ECF No. 1-2.  They bought a used

25    RV in July 2019 and parked it under the eaves of their historic barn, which was built by

26    Scandinavian sailors in the 1850s.  *Id.* ¶¶ 52–54.  They used the RV without any problems for

27    several months and rented it to students who lived on the ranch.  *Id.* ¶ 54.

28    /////

1

1    In October 2019, April Tomczak was renting the RV. *Id.* ¶ 55. One Friday morning, she

2    woke up early and went to class. *Id.* The refrigerator was on and plugged into an external power

3    source. *Id.* When she came back to check on the horses, the power in the RV had stopped

4    working, and she smelled smoke. *Id.* The refrigerator was burning. *Id.* She went for help, but

5    the fire quickly overtook the RV, the barn, and the nearby utility poles. *Id.* ¶¶ 55–56. The fire

6    department was eventually able to extinguish the fire, but not before the RV, the barn, and various

7    vehicles and farm equipment were destroyed. *Id.* ¶ 58. Ms. Tomczak lost everything but the

8    clothes she was wearing. *Id.* Tests later confirmed the refrigerator's cooling system had

9    corroded, cracked, and leaked, which started the fire. *Id.* ¶ 62.

10    The refrigerator was manufactured by Dometic Corporation, which in a strange twist of

11    fate has Scandinavian roots itself. *See id.* ¶¶ 9, 52. Dometic and its affiliates have manufactured

12    and distributed gas-absorption refrigerators for many years. *Id.* ¶¶ 10–11. These refrigerators are

13    commonly installed as original equipment in RVs and boats. *See id.* ¶¶ 12, 21–22. Gas

14    absorption refrigerators have no moving parts. *Id.* ¶ 22. They rely instead on a process of

15    evaporating and condensing ammonia gas, which produces a cooling effect. *See id.* The

16    chemicals involved in this process are flammable and toxic. *See id.* ¶¶ 22–23.

17    The plaintiffs allege that a design defect in Dometic's refrigerators permits these

18    chemicals to corrode their container and escape, which can cause fires even in normal operating

19    conditions. *See id.* ¶¶ 27–30. They pin the defect on a single design decision common to all of

20    Dometic's refrigerators: the use of a single line of weld to connect two of the components in the

21    refrigerator's cooling system. *See id.* ¶ 26. Dometic has allegedly known about this defect for

22    years, and according to the plaintiffs, the company has long attempted to conceal it, minimize it,

23    and avoid any responsibility for damages. *See, e.g., id.* ¶ 49. They allege, for example, that

24    Dometic has wrongly limited recalls to only a few of the faulty refrigerators, has knowingly

25    installed ineffective retrofits, and has concealed evidence of widespread failures. *See, e.g., id.*

26    ¶¶ 42–47, 49(b), (h).

27    Lane and Lisa Labbe, their daughter, and Ms. Tomczak filed this lawsuit against Dometic

28    in Plumas County Superior Court. *See generally* Compl. They assert seven claims under

1    California law for strict liability, negligence, and fraudulent concealment.  Dometic removed the

2    case to this court on the basis of the parties' diversity.  *See* Not. Removal ¶ 4, ECF No. 1.  It

3    moves to dismiss the fraud claim and the plaintiffs' request for punitive damages under Rule

4    12(b)(6), and it moves to strike several of their allegations under Rule 12(f), as explained in more

5    detail below.  *See* Mot. Dismiss, ECF No. 12; Mot. Strike, ECF No. 11.  The plaintiffs opposed

6    both motions.  *See* Opp'n Dismiss, ECF No. 18; Opp'n Strike, ECF No. 19.  Dometic replied, and

7    the court submitted both motions without a hearing.  *See* Reply Dismiss, ECF No. 20; Reply

8    Strike, ECF No. 21; Minute Order, ECF No. 22.

9    **II.    MOTION TO DISMISS**

10        **A.    Fraud**

11        A party may move to dismiss for "failure to state a claim upon which relief can be

12   granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint lacks a

13   "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory.

14   *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013).  The court

15   assumes all factual allegations are true and construes "them in the light most favorable to the

16   nonmoving party."  *Steinle v. City & Cty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019).

17   If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion

18   must be granted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

19        A complaint need ordinarily contain only a "short and plain statement of the claim

20   showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual

21   allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But when a plaintiff claims

22   to have been defrauded, the complaint "must state with particularity the circumstances

23   constituting fraud."  Fed. R. Civ. P. 9(b).  The plaintiffs' fraudulent concealment claim here is

24   subject to this pleading standard.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir.

25   2009).

26        "Particularity," as that word is used in Rule 9(b), means the complaint must explain the

27   circumstances of the alleged fraud specifically enough to give the defendants "notice of the

28   particular misconduct" so "they can defend against the charge and not just deny that they have

3

1   done anything wrong." *Id.* at 1124 (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th

2   Cir. 2001)).  A common gloss on this standard explains that a complaint must detail "the who,

3   what, when, where, and how" of the alleged fraud.  *See, e.g.*, *Vess v. Ciba–Geigy Corp. USA*, 317

4   F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

5            A claim for fraud by nondisclosure or concealment "is somewhat different" from a claim

6   of an affirmative misrepresentation.  *Stewart v. Electrolux Home Prods. Inc.*, 304 F. Supp. 3d

7   894, 906 (E.D. Cal. 2018).  A plaintiff defrauded by an omission cannot be expected to explain

8   the time, place, or even the content of that omission as specifically as the victim of a false

9   assertion can be expected to detail a lie.  *See Falk v. General Motors*, 496 F. Supp. 2d 1088,

10  1098–99 (N.D. Cal. 2007).  For that reason, district courts in this Circuit have usually required

11  complaints of fraud by nondisclosure only to "describe the content of the omission and where the

12  omitted information should or could have been revealed" and to offer "representative samples" of

13  the representations the plaintiff relied on.  *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002

14  (N.D. Cal. 2009); *accord, e.g.*, *Stewart*, 304 F. Supp. 3d at 907; *Eisen v. Porsche Cars N.A., Inc.*,

15  No. 11-9405, 2012 WL 841019, at * 3 (C.D. Cal. Feb. 22, 2012).

16           The complaint here satisfies that standard.  Its thesis is clear: Dometic's refrigerators

17  relied on a defective "Single Weld Design" that made all of them susceptible to fires and

18  explosions under ordinary conditions, and Dometic knew this but did not disclose the defect.

19  Instead, it issued artificially limited recall notices, publicly underestimated the number of

20  defective refrigerators, made piecemeal retrofits, and used safety tests designed to yield false

21  negatives.

22           The complaint also sets forth representative examples of these alleged omissions.  The

23  plaintiffs allege, for example, that Dometic minimized the defect in a 2006 recall notice by

24  describing the problem as "a fatigue crack that may develop in the boiler tube in the area of the

25  weld between the boiler tube and heater pocket."  Compl. ¶ 49(a).  According to the complaint,

26  this explanation was misleading because these fatigue cracks were merely a symptom of the

27  underlying defect: "corrosion pitting and cracking of the inside of the boiler tube caused by the

28  use of the Single Weld Design."  *Id.*  Another recall notice cited in the complaint described an

1    "inconsistent weld process"—which Dometic claimed to have corrected by using robotic welding

2    instead of manual welding—when again, according to the complaint, the true defect was an

3    underlying problem with the overall design of the weld.  *See id.* ¶ 41.  The complaint also alleges

4    that the 2006 recall notice reported Dometic's refrigerators "may contain potential defects" when

5    Dometic knew all of its refrigerators had the defect, *id.* ¶ 49(b), and that recalls were artificially

6    restricted to only certain two-door models, *id.* ¶ 49(k).

7         The plaintiffs claim similarly that Dometic's notices withheld information about how

8    many fires its refrigerators had caused—more than 800—by estimating that fewer than 100

9    refrigerators were defective.  *See id.* § 49(b).  When Dometic did make changes or retrofit

10   refrigerators, the plaintiffs allege, it installed devices only to "counter the propensity of the

11   underlying defect to cause fires by shutting off electricity to the refrigerator controls."  *Id.* ¶ 49(*l*).

12   It did not address the "root cause" of the fires, i.e., "internal corrosion of the boiler tube wall."  *Id.*

13   And according to the complaint, Dometic's quality controls and field tests were designed not to

14   detect danger; the tests assumed pressures much lower than those that would be observed when

15   the refrigerators were operating normally.  *See id.* ¶ 49(g), (i).

16        Dometic argues the complaint does not give it enough information to prepare a defense

17   because it is unclear what the plaintiffs think its employees should have said on which date and

18   where.  *See* Mot. Dismiss at 8–11.  But the complaint is not so vague.  It offers several paragraphs

19   to explain what the plaintiffs believe was wrong with the refrigerators, *see* Compl. ¶¶ 24–36; how

20   Dometic could have fixed the alleged defect, *see id.* ¶ 49(m); and when and how Dometic could

21   have disclosed the defect, but did not, including in two recall notices issued in 2006 and 2008, *see*

22   *id.* ¶¶ 39–49.  The complaint also identifies several Dometic employees and consultants, often by

23   name, including a man who administered a fire claim database and a scientist who investigated

24   whether the fridges caused fires.  *See id.* ¶¶ 37(a), 49(e), (h), (j).  These allegations are enough;

25   Rule 9(b) does not demand allegations on par with the evidence that would be necessary to defeat

26   a motion for summary judgment or to prevail at trial.  *See, e.g., Cooper*, 137 F.3d at 627

27   (declining for this reason "to require that a complaint must allege specific shipments to specific

28   customers at specific times with a specific dollar amount of improperly recognized revenue").

1          Dometic's argument also overlooks a long-recognized "exception to Rule 9(b)'s

2     particularized pleading requirement" for facts that are "peculiarly within the defendant's

3     knowledge" or that the defendant can "readily" obtain. *Neubronner v. Milken*, 6 F.3d 666, 672

4     (9th Cir. 1993). Dometic can determine which employees in which positions were responsible for

5     the allegedly misleading recall notices, retrofits, field tests, and other alleged omissions. The

6     plaintiffs, by contrast, cannot fairly be expected to know which of Dometic's employees did what,

7     where, and when.

8          The cases Dometic cites do not show otherwise. In none did the pleadings offer the same

9     detail the plaintiffs have alleged here, and in none was it appropriate to apply the exception

10    described in the previous paragraph. *See Immobiliare, LLC v. Westcor Land Title Ins. Co.*,

11    424 F. Supp. 3d 882, 886, 890 (E.D. Cal. 2019) (dismissing because the plaintiff company did not

12    allege which employee wrongly withheld information about a pending tax dispute); *Sukonik v.*

13    *Wright Med. Tech., Inc.*, No. 14-08278, 2015 WL 10682986, at *16 (C.D. Cal. Jan. 26, 2015)

14    (dismissing because the plaintiff had alleged "merely" that the defendant had "purposefully

15    downplayed and understated the serious nature of the risks associated with the use of [its] device

16    in order to increase and sustain sales"); *Perry v. JP Morgan Chase Bank, N.A.*, No. 11-0216, 2011

17    WL 2259121, at *5 (E.D. Cal. June 7, 2011) ("Plaintiffs fail to explain what the alleged

18    misrepresentations were, how they were misleading, and when these misrepresentations were

19    made."); *Bell v. Fed. Home Loan Mortg. Corp.*, No. 11-2514, 2012 WL 1581075, at *5 (S.D. Cal.

20    May 4, 2012) (dismissing claims that the defendants had "generally concealed information and

21    induced reliance" as falling short of Rule 9(b)).

22         Dometic also argues that regardless of Rule 9(b), the complaint does not include factual

23    allegations that, if true, show the plaintiffs relied on any of the allegedly fraudulent statements.

24    *See* Mot. Dismiss at 11. "[J]ustifiable reliance" is an element of a fraud claim based on

25    concealment or nondisclosure. *Kearns*, 567 F.3d at 1126 (quoting *Engalla v. Permanente Med.*

26    *Group, Inc.*, 15 Cal. 4th 951, 974 (1997)). "[T]he plaintiff must have been unaware of the fact

27    and would not have acted as he did if he had known of the concealed or suppressed fact."

28    *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162 Cal. App. 4th 858, 868 (2008).

1    Here, it is reasonable to infer the plaintiffs would have acted differently if what they allege is true.

2    An example suffices to show this is so: according to the complaint, Dometic withheld information

3    about fire risks from its recall notices, and it artificially limited its recall and retrofit campaigns.

4    *See, e.g.*, Compl. ¶ 49.  An effective recall notice would have reached the plaintiffs, and no

5    logical leap is necessary to see why they might not have parked their RV beneath a vintage

6    wooden barn full of hay if they had known the refrigerator posed a fire risk, even a minor risk.

7    As plaintiffs allege, they might have stopped using the refrigerator or replaced it.  *See id.* ¶ 107.

8         Finally, Dometic urges dismissal of the fraud claim as duplicative of the negligence and

9    strict liability claims.  *See* Mot. Dismiss at 12–13.  Although federal courts have discretion to

10   "dismiss duplicative claims," *M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082, 1091 (9th Cir. 2012),

11   the cases Dometic cites rely on a more specific state-law doctrine: the economic loss rule, *see*

12   Mot. Dismiss at 12 (citing *Vigdor v. Super Lucky Casino, Inc.*, No. 16-05326, 2017 WL 2720218,

13   at *6 (N.D. Cal. June 23, 2017), and *WeBoost Media S.R.L. v. LookSmart Ltd.*, No. 13-5304, 2014

14   WL 2621465, at *6 (N.D. Cal. June 12, 2014)).  Dometic has not explained why the economic

15   loss rule bars the plaintiffs' fraud claims.  The court will not consider that question on its own

16   motion.  Failing to develop an argument is equivalent to waiving it.  *Lexington Ins. Co. v. Silva*

17   *Trucking, Inc.*, No. 14-0015, 2014 WL 1839076, at *3 (E.D. Cal. May 7, 2014).  Nor is the fraud

18   claim truly duplicative of the plaintiffs' negligence and strict liability claims.  *Compare, e.g.*,

19   *Kearns*, 567 F.3d at 1126 (listing the elements of fraud claims under California law), *with, e.g.*,

20   *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 478–80 (2001) (discussing the elements of various

21   products liability claims under California law).  The federal rules permit a party to "state as many

22   separate claims or defenses as it has."  Fed. R. Civ. P. 8(d)(3).  The court denies the motion to

23   dismiss the fraud claim.

24        **B.    Punitive Damages**

25        Dometic next moves to dismiss the plaintiffs' punitive damages claims.  California law

26   permits plaintiffs to recover punitive damages in actions "for the breach of an obligation not

27   arising from contract" if they prove "by clear and convincing evidence that the defendant has

28   been guilty of oppression, fraud, or malice."  Cal. Civ. Code § 3294(a).  As used in that section,

7

1    "oppression" is "despicable conduct that subjects a person to cruel and unjust hardship in

2    conscious disregard of that person's rights." *Id.* § 3294(c)(2). "Fraud" is "an intentional

3    misrepresentation, deceit, or concealment of a material fact known to the defendant with the

4    intention on the part of the defendant of thereby depriving a person of property or legal rights or

5    otherwise causing injury." *Id.* § 3294(c)(3). "Malice" means "conduct which is intended by the

6    defendant to cause injury to the plaintiff or despicable conduct which is carried on by the

7    defendant with a willful and conscious disregard of the rights or safety of others." *Id.*

8    § 3294(c)(1).

9         Here, as described above, the complaint states a claim for fraud, and it is plausible that a

10   jury could find fraud by clear and convincing evidence. It is also plausible that a jury could find

11   malice by clear and convincing evidence. "Marketing a product that is known to be defective and

12   dangerous to consumers supports an inference of malice for purposes of punitive damages."

13   *Karlsson v. Ford Motor Co.*, 140 Cal. App. 4th 1202, 1230 (2006). If, as the plaintiffs allege,

14   Dometic suppressed information about the danger of its refrigerators for many years, *see, e.g.*,

15   Compl. ¶ 49(a), (b), (d)–(g), acquired competitors with safer products and discontinued those

16   safer product lines, *id.* ¶ 49(m)(i), and branded its paid contractors as "independent" fire

17   investigators, *id.* ¶ 49(h), then it is plausible a jury could find malice. The court denies the

18   motion to dismiss the punitive damages claims.

19   **III.    MOTION TO STRIKE**

20        A court may strike any portion of a pleading that is "redundant, immaterial, impertinent,

21   or scandalous." Fed. R. Civ. P. 12(f). An allegation is "redundant" if it is "needlessly repetitive

22   or wholly foreign to the issues involved in the action." *Cal. Dep't. of Toxic Substances Control v.*

23   *Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (citation omitted). An allegation is

24   "immaterial" if there is "no essential or important relationship" to the pleaded claims or defenses.

25   *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993) (quoting 5 Charles A. Wright &

26   Arthur R. Miller, Federal Practice and Procedure § 1382, at 706–07 (1990)), *rev'd on other*

27   *grounds*, 510 U.S. 517 (1994). An allegation is "impertinent" if it consists of statements "that do

28   not pertain, and are not necessary, to the issues in question." *Id.* (quoting Wright & Miller, *supra*,

1   at 711). An allegation is "scandalous" if it casts a "cruelly derogatory light on a party or other

2   person." *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).

3          Rule 12(f) is meant to avoid unnecessary expenditures of time and money over "spurious

4   issues." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citation and

5   quotation marks omitted). Motions to strike are denied "unless it is clear the matter to be stricken

6   could have no possible bearing on the subject matter of the litigation." *Neveu v. City of Fresno*,

7   392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005) (citation and quotation marks omitted). "[C]ourts

8   often require a showing of prejudice by the moving party." *Wynes v. Kaiser Permanente Hosps.*,

9   No. 10-00702, 2011 WL 1302916, at *12 (E.D. Cal. Mar. 31, 2011).

10         Here, Dometic moves to strike portions of the complaint as follows. It first argues the

11  complaint's introduction is needlessly sensationalistic. Mot. Strike at 8–10. The court agrees.

12  The complaint's first two paragraphs are overlong and unnecessarily caustic. In the language of

13  Rule 12(f), they are "impertinent" and "scandalous."

14         Second, Dometic moves to strike four illustrations showing damages allegedly caused by

15  defects in its refrigerators and a paragraph describing those figures. *See* Mot. Strike at 10–12

16  (citing Compl. ¶ 29 & Figures 1–4). It argues these allegations are irrelevant because they relate

17  to claims pending in other litigation and "will force the parties . . . to engage in costly, protracted

18  discovery regarding the claims at issue in a different matter . . . ." *Id.* at 12. Dometic has not

19  shown that these allegations "have no possible bearing on the subject matter of the litigation."

20  *Neveu*, 392 F. Supp. 2d at 1170. The plaintiffs allege all of Dometic's refrigerators share the

21  same defect. *See* Compl. ¶¶ 24–30. If that is so, then the figures and description are relevant to

22  show the results of that defect. Dometic has other tools to avoid costly and burdensome

23  discovery about other litigation, including motions for protective orders under Rule 26(c)(1).

24         Third, Dometic moves to strike allegations about its conduct in other litigation. *See* Mot.

25  Strike at 12–15 (citing Compl. ¶¶ 37, 39, and 49(e), (h), and (j)). These paragraphs are relevant to

26  explain why the plaintiffs believe Dometic knew about the defect and attempted to conceal it.

27  Paragraph 37 alleges Dometic "has had actual knowledge that [its] gas absorption refrigerators

28  were leaking and igniting fires." Paragraph 39 describes two safety recalls that allegedly were

9

1   too narrow.  In paragraph 49(e), the plaintiffs allege Dometic has relied on the biased opinions of

2   its own retained engineers to claim that its refrigerators were safe.  Paragraph 49(h) alleges

3   similarly that Dometic described its own retained investigators as "independent."  And paragraph

4   49(j) alleges that Dometic has attempted to conceal evidence of its wrongdoing with bad-faith

5   assertions of attorney-client privilege and dubious threats of sanctions.  If these allegations are

6   false or misleading, as Dometic argues they are, *see, e.g.*, Mot. Strike at 14, then it may deny

7   them, prove them wrong, and—if warranted—seek sanctions under Rule 11(b) and (c).

8   　　　Fourth, Dometic moves to strike paragraph 37, arguing it inappropriately characterizes its

9   position on a contested issue.  *See* Mot. Strike at 15–16.  It does not.  The paragraph alleges only

10   that Dometic knows and has admitted that its refrigerators carry a risk of fire.  *See* Compl. ¶ 37

11   ("Dometic acknowledges, understands and concedes that leaks in [its] gas absorption refrigerator

12   cooling units carry the risk of fire and consequent 'injury or death' to individuals using their

13   products as designed and intended, and for a reasonably foreseeable purpose.").  If that allegation

14   is false, Dometic may deny it.

15   　　　Finally, Dometic moves to strike the complaint's allegations of fraud.  *See* Mot. Strike at

16   16–18.  This request is conditional on the court's decision to dismiss the fraud claim.  *See* Reply

17   Strike at 5.  Because the court has denied the motion to dismiss the fraud claim, it also denies the

18   motion to strike the fraud allegations.

19   **IV.   CONCLUSION**

20   　　　The motion to dismiss is **denied**.  The motion to strike is **granted in par**t.  Paragraphs

21   one and two and the first sentence of paragraph three are **stricken** from the complaint.

22   　　　This order resolves ECF Nos. 11 and 12.

23   　　　IT IS SO ORDERED.

24   DATED:  March 21, 2022.

CHIEF UNITED STATES DISTRICT JUDGE