1
2
3
4
5
6
7
8                    **IN THE UNITED STATES DISTRICT COURT**
9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10
11   LANE LABBE, et al.,                          No.  2:20-CV-1975-KJM-DMC
12                    Plaintiffs,
13           v.                                    ORDER
14   DOMETIC CORPORATION,
15                    Defendant.
16
17           Plaintiffs, who are proceeding with retained counsel, bring this civil action
18   alleging products liability.  The matter was removed from the Plumas County Superior Court
19   under this Court's diversity jurisdiction.  See ECF No. 1.  Pending before the Court is Plaintiffs'
20   motion to compel.  See ECF No. 41.  The parties have filed a two-volume joint statement in
21   support of their respective positions.  See ECF Nos. 49 (Vol. 1), 50 (Vol. 2), 51 (Amended Vol.
22   2).  Following a hearing before the undersigned on July 20, 2022, the matter was submitted.
23           The purpose of discovery is to "remove surprise from trial preparation so the
24   parties can obtain evidence necessary to evaluate and resolve their dispute." United States v.
25   Chapman Univ., 245 F.R.D. 646, 648 (C.D. Cal. 2007) (quotation and citation omitted). Rule
26   26(b)(1) of the Federal Rules of Civil Procedure offers guidance on the scope of discovery
27   / / /
28   / / /

                                     1

1 permitted:

> Parties may obtain discovery regarding any nonprivileged information that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Under Rule 37 of the Federal Rules of Civil Procedure, "a party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). The Court may order a party to provide further responses to an "evasive or incomplete disclosure, answer, or response." Fed. R. Civ. P. 37(a)(4). "District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16.'" Hunt v. County of Orange, 672 F.3d 606, 616 (9th Cir. 2012) (quoting Avila v. Willits Envtl. Remediation Trust, 633 F.3d 828, 833 (9th Cir. 2011)).

The party moving to compel bears the burden of informing the court (1) which discovery requests are the subject of the motion to compel, (2) which of the responses are disputed, (3) why the party believes the response is deficient, (4) why any objections are not justified, and (5) why the information sought through discovery is relevant to the prosecution of this action. McCoy v. Ramirez, No. 1:13-cv-1808-MJS (PC), 2016 U.S. Dist. LEXIS 75435, 2016 WL 3196738, at *1 (E.D. Cal. June 9, 2016); Ellis v. Cambra, No. 1:02-cv-5646-AWI-SMS PC, 2008 U.S. Dist. LEXIS 24418, 2008 WL 860523, at *4 (E.D. Cal. Mar. 27, 2008).

"Relevance for purposes of discovery is defined very broadly." Garneau v. City of Seattle, 147 F.3d 802, 812 (9th Cir. 1998). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." Bryant v. Ochoa, No. 07cv200 JM (PCL), 2009 U.S. Dist. LEXIS 42339, 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) (internal citation omitted).

/ / /

2

# I. BACKGROUND

### A.   Procedural History

Following removal of this matter from the Plumas County Superior Court, Defendant filed a motion to dismiss as well as a motion to strike.  See ECF Nos. 11 and 12.  On March 22, 2022, the District Judge issued an order denying Defendant's motion to dismiss and granting Defendant's motion to strike in part.  See ECF No. 38.  Specifically, the District Judge concluded that the introduction section to the original complaint was needlessly sensationalistic. See id. at 9.  The District Judge ordered that paragraphs one and two, and the first sentence of paragraph three, be stricken.  See id. at 10.  Plaintiffs then filed a first amended complaint on April 22, 2022.  See ECF No. 40.  Defendant filed its answer on May 6, 2022.  See ECF No. 42.

### B.   Plaintiffs' Allegations

Plaintiffs are Lane Labbe, Lisa Labbe, Jane Labbe, and April Tomczak.  See ECF No. 40, ¶¶ 4 and 5.  Defendant is a Delaware corporation.  See id. at ¶ 6.  According to the first amended complaint, in July 2019 Plaintiffs Lane and Lisa Labbe purchased an RV from a private party and the RV was equipped with a Dometic 2-door Model RM 2652 gas absorption refrigerator.  See id. at ¶ 50.  Between the date of purchase and October 25, 2019, Plaintiffs used the RV without problem.  See id. at ¶ 51.  Plaintiffs state that they own and operate a horse boarding and training facility – New England Rach – and would park the RV under the eaves of the hay barn and rent it out to local students who lived on the property and worked in the horse training facility.  See id. at ¶ 52.

On October 25, 2019, Plaintiff April Tomczak was a student at Feather River Community College and was renting the RV as student housing.  See id. at ¶ 53.  The RV was connected to a 30-amp electrical service in the hay barn.  See id.  The Dometic refrigerator was on and set to "auto."  See id.  Plaintiff Tomczak was using her hairdryer when it shut off.  See id. At the time, she also noticed that her phone was not charging.  See id.  As Plaintiff Tomczak entered the living room of the RV, she smelled an "odd" odor and noticed smoke coming from the crack between the refrigerator and the cabinet.  See id.  She did not see any smoke coming from any other area of the RV except the refrigerator.  See id.  She opened the refrigerator and

1   saw that the smoke was coming from inside.  See id.  The smoke quickly intensified, and Plaintiff

2   Tomczak left the RV.  See id.  As Plaintiff Tomczak passed the outside of the RV, she heard

3   popping and cracking noises coming from the refrigerator vents.  See id.

4              A fire then spread from the refrigerator cabinet up and out of the top vent of the

5   RV and was starting to burn the eaves of the hay barn.  See id. at 54.  After 911 was called, the

6   fire spread rapidly, igniting the hay in the hay barn.  See id.  The fire then spread to nearby trees

7   and a utility pole.  See id.  The Quincy Volunteer Fire Department responded and extinguished

8   the fire.  See id.  Plaintiffs allege that the Quincy Volunteer Fire Department investigated the

9   cause of the fire, which was determined to be the Dometic gas absorption refrigerator in the RV.

10  See id. at ¶ 58.

11             Plaintiffs assert the following theories of liability:

12             Count I        Strict Products Liability Based on Design Defect.

13             Count II       Strict Products Liability Based on Failure to Warn.

14             Count III      Negligence Based on Design Defect.

15             Count IV       Negligence Based on Failure to Warn.

16             Count V        Negligence Per Se.

17             Count VI       Negligence Based on Failure to Conduct Adequate Recall.

18             Count VII      Fraud by Concealment.

19             See id. at ¶¶ 66-106.

20

21                              **II.  DISCUSSION**

22             At issue are Defendant's responses to 81 of Plaintiffs' interrogatories, set one, and

23  requests for production, sets one, two, and three.  Also at issue is Defendant's objection to

24  Plaintiff's deposition notice for Defendant's Rule 30(b)(6) witness.  In Volume 1 of the parties'

25  joint statement, the parties assert arguments relating to 12 common issues.  See ECF No. 49.

26  There Court will by this order resolve the common issues identified by the parties and direct

27  further meet-and-confer efforts in light of these rulings to resolve the 81 specific disputes.

28  / / /

The 12 common issues in dispute are:

1. Defendant's General Objection No. 9 to Interrogatories, Set One.

2. Defendant's Objections to Definition Nos. 19, 20, 21, 22, 23, 24, and 25

3. Discovery seeking identities of witnesses.

4. Discovery seeking information regarding other similar incidents.

5. Defendant's objections regarding the proportionality of Plaintiffs' discovery requests.

6. Discovery seeking Dr. Buc's testing material.

7. Defendant's objections regarding possession, custody, and control.

8. Defendant's references in response to interrogatories to documents previously produced interrogatories.

9. Plaintiffs' requests for "all" documents.

10. Excessive number of interrogatories.

11. Defendant's objections to notice of deposition of Rule 30(b)(6) witness.

12. Discovery seeking NHTSA draft reports.

See id.

**A.      Defendant's General Objection No. 9 to Interrogatories, Set One**

As to all of Plaintiff's interrogatories, Defendant asserted 14 general objections. See id. at 14.  As part of the meet-and-confer process, Defendant agreed to withdraw all of its general objections except Objection No. 9.  See id. at n.21.  Defendant's Objection No. 9 is as follows:

> Dometic objects to each and every Interrogatory to the extent that the Interrogatories themselves, the definitions, and the instructions set forth therein seek to impose obligations upon Dometic beyond the requirements of the Federal Rules of Civil Procedure, the Local Rules of this Court, and any other applicable law, rules, or statutes.

> Id. at 14.

/ / /

/ / /

/ / /

/ / /

1    Plaintiffs argue that parties must respond with specificity to discovery requests and

2    that this includes making particularized objections.  See id. at 15.  According to Plaintiffs,

3    Defendant's Objection No. 9 is "boilerplate" which fails to meet this burden.  See id.  Plaintiff

4    contend boilerplate objections may be summarily overruled by the Court.  See id.  Plaintiffs add:

5    
> Here, Dometic has made no meaningful effort to demonstrate the
> application of their one remaining General Objection to any particular
> interrogatory, and the objection is therefore of no consequence and should be
> overruled in its entirety, and not incorporated into any specific discovery
> response to Plaintiffs' First Set of Interrogatories.

8    Id. at 16.

9    According to Defendant:

10   
> Dometic's general objections should not be overruled. Plaintiffs'
> argument to the contrary is premised entirely on their assertion that
> Dometic's objections are "boilerplate." For the reasons discussed below, this
> is simply not the case. See Joint Statement, Vol. 1, Sec. VI(E). In any event,
> Dometic's objection to any Interrogatory, definition, or instruction that
> violates or exceeds the applicable rules is not boilerplate. To the contrary,
> that objection is necessitated by the issues that pervade Plaintiffs'
> Interrogatories, including Plaintiffs' definition of "DOCUMENT," which is
> defined with reference to what that term "includes, but is not limited to[.]"
> See Plaintiffs' First Set of Interrogatories, Definitions ¶ 2. Dometic lodged
> this objection to preserve what it considers to be an obvious position: that
> discovery requests issued by Plaintiff may not violate the rules of the Court.

17   ECF No. 49, pg. 16.

18   Parties responding to discovery requests must do so with specificity, which

19   includes making particularized objections.  See DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458

20   (C.D. Cal. 2002).  A responding party's burden is not met with generalized and conclusory

21   boilerplate objections.  See F.T.C. v. AMG Servs., Inc., 291 F.R.D. 544, 553 (D. Nev. 2013).

22   Defendant's assertion to the contrary notwithstanding, Objection No. 9 is clearly

23   boilerplate and even more clearly not specific to any particular interrogatory.  For example, the

24   objection mentions "obligations" but does not specify which obligations Plaintiffs' interrogatories

25   seek to impose.  Similarly, the objection speaks to violations of the Federal Rules of Civil

26   Procedure, this Court's Local Rules, and "any other applicable law, rules, or statutes," but

27   provides no specificity or link to a particular interrogatory in dispute.  Defendant offers no further

28   clarity or specificity in its portion of the joint statement.  Rather, Defendant's argument confirms

6

that Objection No. 9 is a "throw-away" objection in that it is interposed only to say generally that "discovery requests issued by Plaintiff [sic] may not violate the rules of the Court."  ECF No. 49, pg. 16.

At the hearing, the Court asked defense counsel whether a specific objection is being contemplated.  Counsel responded that the basis for Objection No. 9 is the numerosity of Plaintiffs' interrogatories.  This exchange further confirms that Objection No. 9 is a "throw-away" boilerplate objection, particularly given that the numerosity issue is specifically raised by Defendant elsewhere in response to Plaintiffs' motion to compel, as discussed below in Section J.

Because Objection No. 9 does not state any specific basis for objection, it is overruled.

**B.**     **Defendant's Objections to Definition Nos. 19, 20, 21, 22, 23, 24, and 25**

Defendant asserted 11 objections to Plaintiffs' definitions relevant to Plaintiffs' interrogatories.  See ECF No. 49, pg. 16, n.23.  During the meet-and-confer process, Defendant withdrew three of its objections.  See id.  According to the joint statement, Defendant also asserted the remaining objections to definitions relevant to Plaintiff's requests for production.  See id.  Plaintiffs ask that the objections to definitions be overruled as to all discovery requests.  See id.

At issue are the following definitions incorporated into Plaintiff's discovery requests:

19.     "INCIDENT LOG," as used in these discovery requests, refers to the document(s) and/or electronic databases maintained and updated by DOMETIC of all incidents and/or claims involving Dometic-branded gas absorption refrigerators, including, but not limited to, claims alleging that a Dometic-branded gas absorption refrigerator was the origin and/or cause of a fire.

20.     "INCIDENT FILES," as used in these discovery requests, refers to the paper files and/or electronic databases DOMETIC opens, creates, maintains and updates regarding INCIDENT LOG entries.

/ / /

/ / /

/ / /

1        21.     "DOMETIC-BRANDED GAS ABSORPTION
REFRIGERATORS" or "DGAR" refers to Dometic-branded gas absorption
2    refrigerators designed, manufactured, sold, distributed or otherwise placed
into the stream of commerce since January 1, 1997, including, but not limited
3    to, Models RM 2620, RM/DM 2652, RM/DM 2662, RM/DM 2663, RM
3762, DMR/DMC 7-Series, RM 2820, DM 2852, DM 2862, RM 3862, RM
4    3863, RM 3962.

5        22.     "DGAR DATA" refers to information collected by YOU
regarding the design, manufacture, assembly, sales, marketing, performance,
6    FIRE CLAIMS HISTORY, PRODUCTION RUN TEST RESULTS, POST
PRODUCTION TEST RESULTS, failure, defects, product safety recalls and
7    retrofit campaigns of DGARs and COOLING UNITS between January 1,
1997 and the date of YOUR responses to these Requests.
8
9        23.     "FIRE CLAIMS HISTORY," as used in these discovery
requests, refers to claims received by DOMETIC, either directly or
10   indirectly, and regardless of whether the claim is in the form of an insurance
demand, warranty claim, consumer complaint or any other form, wherein a
11   DGAR and/or COOLING UNIT is alleged to be involved in or the cause of a
fire resulting in property damage and/or bodily injury.

12       24.     "PRODUCTION RUN TEST RESULTS," as used in these
discovery requests, refers to any testing or inspection of DGARs, including
13   COOLING UNITS, during manufacture, including, but not limited to,
pressure tests, frost tests, electrical tests, mass spectrometer tests, and further
14   including DOMETIC's practice of recording the test results by refrigerator or
COOLING UNIT serial number.
15
16       25.     "POST PRODUCTION TEST RESULTS," as used in these
discovery requests, refers to any testing, by DOMETIC or at DOMETIC's
17   direction, of DGARs and/or COOLING UNITS after they are manufactured,
or components thereof, and DOMETIC's recording of test results, including,
18   but not limited to, life cycle testing, reliability testing, high ambient
performance testing, stress testing, and failure testing, and further including,
19   but not limited to, computer modeling, simulation, finite element analysis
(FEA) and other computer tests and/or analysis, including, but not limited to,
20   all tests conducted by or in conjunction with outside entities and/or
consultants, including, but not limited to, Anram Asher, R. Craig Jerner, J.E.I
21   Mettalurgical, Inc., Elizabeth Buc and/or Jaime Petty-Galis.

22   ECF No. 49, pgs. 16-18.

23   Without elaboration, explanation, or link to any particular discovery request,

24   Defendant objected to each of these definitions as "vague, ambiguous, overbroad, unduly

25   burdensome, unintelligible, and oppressive." Id. at 18.

26   ///

27   ///

28   ///

1    As with Defendant's general objection discussed above, Plaintiffs contend

2    Defendant's objections to definitions are boilerplate and, as such, should be summarily overruled.

3    See id. at 18-19.  Plaintiffs further note that the terms being defined are the same terms as used in

4    the original complaint and are clearly understood.  See id. at 19.  Plaintiffs argue:

5        Plaintiffs' use of definitions in their discovery requests are clearly
         intended and designed to make the requests more specific and understandable
6        - not less. Rather than accept the definitions in a commonsense manner, and
         meet its obligation to exercise restraint in making objections that are
7        proportional to the needs of the case (footnote omitted), Dometic has instead
         chosen to engage in a ludicrously tortured exercise of feigned ignorance in
8        order to assert meritless objections to confuse and complicate the discovery
         process. Nowhere in this barrage of boilerplate objections is there any claim
9        that Dometic can't decipher what the various Definitions mean. Rather,
         Dometic is asserting these meritless objections in an effort to avoid
10       responding to legitimate discovery, and drive up the cost and complexity for
         the plaintiffs in the bargain. This conduct is not only in direct violation of
11       Fed R. Civ. P. 1, but is the kind of "gamesmanship" that the parties are
         supposed to avoid.
12
13       ECF No. 49, pgs. 19-20.

14       Defendant first asserts that its objections to definitions are not boilerplate.  See id.

15   at 20.  Referencing its argument relating to Issue E, discussed below, Defendant argues:

16       Dometic's definitional objections should not be overruled. Like
         Plaintiffs' argument concerning Dometic's general objections discussed
17       above, Plaintiffs' argument here is premised entirely on their assertion that
         Dometic's definitional objections are "boilerplate." Here again, this is simply
18       not the case. See Joint Statement, Vol. 1, Sec. VI(E).

19       ECF No. 49, pg. 20.

20   In the context of Issue E, Defendant adds:

21       An objection is considered "boilerplate" when it merely states the
         legal grounds for the objection without specifying why the discovery request
22       is deficient. St. Paul Reinsurance Co. v. Commercial Fin. Corp., 198 F.R.D.
         508, 512 (N.D. Iowa 2000).
23
24       ECF No. 49, pg. 35.

25       Finally, Defendant offers an example it says illustrates why its objections to

26   definitions are proper:  ". . .For example, despite the fact that this case involves the causation of a

27   single fire allegedly arising in a single refrigerator, Plaintiffs define 'DGAR' to include all

28   Dometic refrigerators designed, manufactured, sold, distributed, or otherwise placed into the

9

1    stream of commerce in the last twenty-five years, including some refrigerators neither made nor

2    sold by Dometic."  Id. at 20-21.

3              The definition of "boilerplate" offered by Defendant only serves to undermine

4    Defendant's position.  As Defendant notes, a "boilerplate" objection is one that merely states a

5    legal basis for an objection without stating a factual basis for the objection or linking the

6    objection to a specific discovery request.  See St. Paul Reinsurance Co., 198 F.R.D. at 512.

7    Defendant's example further serves to illustrate how Defendant's objections to definitions are

8    mere boilerplate.  Specifically, while Defendant explains in the joint statement why the term

9    "DGAR" is overbroad, Defendant offers no such explanation in response to any particular item of

10   disputed discovery using that term.  Defendant's example also illustrates that Defendant

11   understands precisely what the term DGAR means, thus undercutting its boilerplate objection that

12   the term is vague, ambiguous, and unintelligible.

13             The Court finds that there is sufficient clarity in Plaintiff's definitions such that the

14   parties have been able to respond.  Defendant's general objections to definitions are overruled

15   without prejudice to such objections being made in the context of specific discovery requests.

16        **C.**       **Discovery Seeking Identities of Witnesses**

17             Plaintiffs have propounded numerous discovery requests seeking the identity of

18   Dometic officers, directors, and shareholders.  See ECF No. 49, pgs. 21-22.   Plaintiffs also seek

19   the identities of other victims of fires involving Dometic gas absorption refrigerators as well as

20   those with knowledge of Dometic's two recalls of defective gas absorption refrigerators.  See id.

21   Defendant objects in the context of specific requests on relevance and proportionality grounds.

22   See id. at 22-24.

23             Without citation to any federal authority, Plaintiffs contend that the identities of

24   witnesses likely to have knowledge of discoverable information is always relevant.  See id. at 21.

25   Plaintiffs argue such information is relevant to their claims that Defendant placed defective

26   products into the stream of commerce and that it concealed defects from federal regulators and

27   consumers.  See id. at 21-22.  Plaintiffs further argue that the identities of corporate personnel are

28   relevant to establish Dometic's conduct because it can only act through its officers, directors, and

1  shareholders.  See id.

2         Defendant contends Plaintiffs improperly seek the identifies of all its officers,

3  directors, and shareholders over a 21-year period without any limitation as to the individuals'

4  responsibility or knowledge relating to the facts of the case.  See id. at 22.  In particular, this

5  argument goes to Interrogatory No. 2, which is the only discovery request with this broad time

6  frame.  See id. at n.30.  Defendant also notes that Dometic is a wholly owned subsidiary of

7  Dometic Holding AB, which in turn is a wholly owned subsidiary of Dometic Group AB, a

8  publicly owned company with over 300 million outstanding shares of stock.  See id. at 23.

9  Finally, Defendants assert that the "apex deposition doctrine" precludes Plaintiffs from taking the

10  depositions of his high-ranking officers and directors.  See id. at 23-24.

11         Defendant's objections are well-taken.  First, as Defendant notes, Plaintiff's

12  discovery seeking the identities of various corporate witnesses contain no limitation as to the

13  witnesses' knowledge of the facts of the case.  Plaintiffs have not explained why they need the

14  identities of all of Defendant's corporate officers, many of whom likely have no knowledge

15  whatsoever of facts of this case.  Moreover, as to shareholders, Plaintiffs offer no rationale as to

16  why such individuals would have any relevant knowledge given that corporations act through

17  their officers and directors, not shareholders.

18         Plaintiffs also do not address in the joint statement Defendant's objection

19  concerning the 21-year time frame, which appears to apply only to Interrogatory No. 2.  In

20  Interrogatory No. 2, Plaintiff asks:

21
22        IDENTIFY the officers, directors and shareholders of DOMETIC CORPORATION from 2001 to the date of YOUR responses to these interrogatories. . . .

23        ECF No. 51, pg. 6 (Joint Statement, Amended Vol. 2).

24  Without any limitation as to knowledge of the facts of the case or knowledge about the

25  refrigerator at issue, the request is overbroad.  This problem is compounded given the 21-year

26  period.

27  / / /

28  / / /

11

1    As to discovery requests seeking the identities of other fire victims as well as those

2    with knowledge of Dometic's recalls, Defendant offers no argument.  Defendant focuses instead

3    on those requests seeking the identities of its corporate officers, directors, and shareholders.

4    Regarding corporate officers, directors, and shareholders, the Court finds that

5    Plaintiffs' discovery requests are indeed overbroad.  While Plaintiffs are entitled to appropriate

6    discovery concerning the identities of witnesses who might have knowledge relevant their claims,

7    as currently drafted, Plaintiffs' requests related to witnesses – particularly corporate witnesses –

8    are overbroad.  The Court sustains Defendant's objections and orders the parties to meet-and-

9    confer with respect to more narrowly tailored requests relating to the identities of witnesses.  In

10   this regard, at the hearing defense counsel indicated that Plaintiffs' counsel has been involved in

11   litigation with Dometic in this and other cases for years and that, as a result Plaintiffs' counsel

12   already knows the identities of witnesses with relevant knowledge.  This should only serve to

13   make the meet-and-confer process more efficient.

14        **D.**     **Discovery Seeking Information Regarding Other Similar Incidents**

15   Plaintiff has propounded discovery seeking evidence of similar fires, both before

16   and after the fire in this case.  See ECF No. 49, pg. 24.  The parties agree that such evidence is

17   discoverable if the products are substantially similar.  See id. at 24-27.  Defendant contends

18   Plaintiffs cannot establish substantial similarity between their refrigerator and other gas

19   absorption refrigerators mentioned by Plaintiffs in their discovery requests.  See id. at 27.

20   Defendant's objection is well-taken.  Establishing substantial similarity is a fact-

21   specific process.  See Gibson v. Ford Motor Co., 510 F. Supp. 2d 1116, 1120 (N.D. Ga. 2007).

22   The court in Gilbert held that, while "[d]ifferent models of a product will be relevant if they share

23   with the accident-causing model those characteristics pertinent to the legal issues raised in the

24   litigation, . . . conclusory statements of alleged similarity are not enough."  Id.; see also Piacenti

25   v. Gen. Motors Corp., 173 F.R.D. 221, 225 (N.D. Ill. 1997).  Here, in support of substantial

26   similarity, Plaintiffs cite to allegations in their amended complaint but do not identify facts

27   establishing similarity.  See ECF No. 49, pg. 24 n.32 (referencing ¶¶ 21-36 and 46-49).  These

28   references constitute conclusory statements of alleged similarity not supported by citation to any

12

1    evidence of record which the Court could evaluate to determine substantial similarity.

2    At the hearing, the Court discussed with counsel the precise nature of Plaintiffs'

3    requests relating to similar incidents involving the same or similar model product.  The Court

4    sustains Defendant's general objections and orders that the parties engage in additional meet-and-

5    confer efforts relative to discovery seeking information about similar incidents.  As currently

6    drafted, the Court finds the requests overbroad and not sufficiently tailored ether by time or

7    description.

8    **E.**    **Defendant's Objections Regarding the Proportionality of Plaintiffs'**
     **Discovery Requests**
9

10    Throughout its responses to Plaintiffs' discovery requests, Defendant takes the

11    position that the discovery sought is not proportional to the needs of this case, which involves a

12    single refrigerator and a single fire.  See ECF No. 49, pg. 33.  When provided, this response is the

13    same regardless of the particular discovery request at issue.  See ECF No. 51 (Joint Statement,

14    Amended Vol. 2, containing Defendant's responses).  As discussed above, there is support for the

15    notion that Plaintiffs may be able to discover evidence relating to similar products and other fires.

16    Thus, without reference to the subject area of specific request, Defendant's proportionality

17    objection is boilerplate.

18    Defendant's objection is overruled, but with the caveat that the Court expects the

19    parties to meet and confer in good faith to provide meaningful responses to requests which are

20    more narrowly tailored.

21    **F.**    **Discovery Seeking Dr. Buc's Testing Material**

22    Dr. Elizabeth Buc was hired by Dometic's counsel in 2005 to conduct tests on

23    Dometic-banded gas absorption refrigerators.  See ECF No. 49, pg. 37.  Dr. Buc testified in the

24    context of another action against Dometic alleging product defects that her testing had resulted in

25    21,000 pages of documents, reports, correspondence, photographs, and video.  See id.  Dr. Buc

26    stated in her prior deposition that she boxed up all her materials, sent them to Dometic's general

27    counsel, and did not keep a copy.  See id.  Plaintiffs state that Dr. Buc's testing formed the basis

28    of a 2006 recall of Dometic's gas absorption refrigerators.  See id.

13

1    Plaintiffs seeks Dr. Buc's testing materials by way of Request for Production, Set

2 Two, No. 62 (mislabeled in the amended volume 2 of the joint statement as No. 61).  See ECF

3 No. 51, pg. 209 (Joint Statement, Amended Vol. 2).  Specifically, Plaintiffs requested "ALL BUC

4 TESTING MATERIAL."  See id.  "BUC TESTING MATERIAL" is defined in as "all

5 DOCUMENTS, COMMUNICATIONS, reports, spreadsheets, data, photographs, and or video

6 regarding testing and/or analysis of DGARs by Dr. Elizabeth Buc, including, but not limited to,

7 all material identified by Dr. Buc in her declaration filed as Doc. 51-5 in Bowman vs. Dometic

8 Corporation (SD, Iowa), No. 4:15-cv-00089."  ECF No. 49, pg. 37 n.33.  Defendant objected on

9 the ground that the request seeks documents protected by the attorney-client privilege.  See ECF

10 No. 51, pg. 109 (Joint Statement, Amended Vol. 2).  It appears this "common issue" relates solely

11 to Request for Production, Set Two, No. 62 – the only request for Dr. Buc's materials.

12    Plaintiffs contend that the attorney-client privilege applies only to communications

13 and not underlying facts.  See ECF No. 49, pg. 38.  This argument is persuasive.  See Upjohn Co.

14 v. United States, 449 U.S. 383, 395-96 (1981); see also Philadelphia v. Westinghouse Electric

15 Corp., 205 F. Supp. 830, 831 (E.D. Pa. 1962).  Here, as Plaintiffs note, Plaintiff are not seeking

16 communications between Dometic's counsel and Dometic.  Instead, Plaintiffs seek discovery of

17 underlying facts compiled by Dr. Buc in the course of her testing.  Further, any privilege was

18 waived because Defendant did not provide a privilege log.  See Burlington Northern Santa Fe Ry.

19 Co. v. U.S. Dist. Court for the Dist. Of Montana, 408 F.3d 1142, 1149 (9th Cir. 2005).

20    At the hearing, it became clear that the issue with respect to Dr. Buc's testing

21 materials is not privilege but relevance.  The Court directs the parties to submit supplemental

22 briefing on the relevance of Dr. Buc's testing materials, which briefing is to be completed in

23 accord with the schedule set forth below.

24    **G.    Defendant's Objections Regarding Possession, Custody, and Control**

25    Throughout its responses to requests for production, Defendant objects that it

26 cannot respond because documents are not in its possession, custody, and control.  See ECF No.

27 51 (Joint Statement, Amended Vol. 2).  According to Defendant, it does not have the ability to

28 require parent companies to provide it documents.  See ECF No. 49, pgs. 61-62.  Defendant states

14

1  that it does not have the legal right to obtain documents in the possession of any other entity in

2  the "Dometic family."  Id. at 62.

3          Defendant's argument is persuasive.  See In re Citric Acid Litigation, 191 F.3d

4  1090, 1107 (9th Cir. 1999) (concluding that a party lacks legal control over documents of its

5  affiliates where the affiliates are legally separated entities).  Here, Plaintiffs have not met their

6  burden of showing that Defendant has the power to require affiliated companies to turn over

7  documents.  See Ehrlich v. BMW of North America, LLC, 2011 WL 3489105, at *1 (C.D. Cal.

8  2011).

9          In any event, the rule is simple – if a responding party does not have possession,

10 custody, or control over a document, its statement to that effect constitutes an adequate response.

11 If, however, Dometic responds that it does not have possession, custody, or control over a

12 document and it later turns out that it does and discovery responses have not been appropriately

13 supplemented as required under Federal Rule of Civil Procedure 26, the document will be

14 excluded.  The parties are reminded of their obligation to respond to discovery requests in good

15 faith and of their continuing obligation to supplement their responses.  Plaintiffs' general

16 objection regarding possession, custody, or control is overruled.

17      **H.**     **Defendant's References in Response to Interrogatories to Documents**
             **Previously Produced**
18

19         In response to a number of interrogatories, Defendant provided responses referring

20 to documents previously produced and asserting that the answers to the interrogatories could be

21 determined by examining those documents and that the burden of doing so is the same for both

22 parties.  See ECF No. 49, pg. 63.  Plaintiffs contend these responses are insufficient.  See id.

23 Defendant argues its responses are allowed under Federal Rule of Civil Procedure 33(d).  See id.

24 at 64.

25         Under Rule 33(d), a party has the option of producing business records in response

26 to an interrogatory.  The responding party may only do so, however, if the answer may be

27 determined by reviewing the records and if the burden of doing so if substantially the same for

28 both parties.  See Fed. R. Civ. P. 33(d).  The business records must be identified with enough

1    detail to allow the propounding party to locate and identify them.  See Fed. R. Civ. P. 33(d)(1).

2              Plaintiffs' general objection to Defendant's reference to documents already

3    produced as a means of responding to interrogatories is overruled.  In doing so, however, the

4    Court expects strict compliance with Rule 33(d)(1) if interrogatories are answered by way of

5    reference to documents.  Specifically, the document must allow the question to be answered.  If it

6    does not, then the responding party is not in compliance with Rule 33(d)(1) and, in the context of

7    specific discovery requests, a motion to compel will be well-received following additional meet-

8    and-confer efforts.

9        **I.      Plaintiffs' Requests for "All" Documents**

10              Throughout its responses to Plaintiff's discovery requests, Defendant objects to

11   requests for "all" information and/or documents on the ground that the discovery sought is not

12   proportional to the needs of the case because Plaintiffs' case involved a single refrigerator and a

13   single fire.  See e.g. ECF No. 51 (Joint Statement, Amended Vol. 2).  Plaintiffs contends

14   Defendant is inappropriately seizing upon the use of this word as the basis for a proportionality

15   objection but fails to ever explain why any particular discovery request is over broad or unduly

16   burdensome.  See ECF No. 49, pgs. 64-65.  Defendant argues its objection has been found

17   sufficient in other litigation.  See ECF No. 49, pgs. 65-66.

18              As a general objection, Defendant's position is unpersuasive.  Unlike the other

19   litigation cited by Defendant, Sanchez v. Cnty. Of Sacramento, No. 2:19-CV-1545-MCE-AC,

20   Plaintiffs' requests seeking "all" documents appear to be sufficiently tailored.  For example, in

21   Request for Production No. 5, Plaintiffs seek:

22              All DOCUMENTS, CORRESPONDENCE and
              COMMUNICATIONS between YOU and YOUR owners and shareholders
23           regarding or related to the design, manufacture, assembly, sales, marketing,
              performance, FIRE CLAIMS HISTORY, PRODUCTION RUN TEST
24           RESULTS, POST PRODUCTION TEST RESULTS, failure, defects,
              product safety recalls and retrofit campaigns of DGARs and/or COOLING
25           UNITS between January 1, 1997 and the date of YOUR responses to these
              Requests, including but not limited to, minutes of corporate
26           officer/shareholder meetings where the failure, defects, BUC TESTING
              MATERIAL, product safety recalls and retrofit campaigns of DGARs were
27           discussed.

28   While this request may be subject to other valid objections, for instance regarding the time frame,

1    it sufficiently describes the universe of responsive documents.

2            To the extent Defendant generally objects to the use of the word "all," the

3    objection is overruled.  The parties are directed to meet and confer with respect to any of the 81

4    specific requests which seek "all" documents.

5        **J.        Excessive Number of Interrogatories**

6            Defendant objects to Plaintiffs' interrogatories on the ground that Plaintiffs have

7    propounded in excess of the 25 interrogatories allowed under Federal Rule of Civil Procedure

8    33(a)(1).  See ECF No. 49, pg. 67.  Plaintiffs contend that, by not objecting when the

9    interrogatories were first served or by seeking a protective order, and my responding to every

10   single interrogatory propounded by Plaintiffs, Defendant has waived any Rule 33(a)(1) objection

11   to the number of interrogatories.  See id. at 66-67.

12           Plaintiffs' position is well-taken.  Defendant has never raised a Rule 33(a)(1)

13   objection prior to the current motion.  As Plaintiffs note, Defendant has responded to every

14   interrogatory propounded.  Defendant's conduct should be seen to constitute a waiver of any Rule

15   33(a)(1) objection and a stipulation to more than 25 interrogatories.  Again, had Defendant

16   thought the number of interrogatories propounded was excessive, it could have sought a

17   protective order.  It did not.

18           While Plaintiffs have already propounded more than 25 interrogatories and

19   Defendant has waived any numerosity objection to interrogatories to which it has already

20   responded, Plaintiffs are precluded from propounding and Defendants need not respond to any

21   new interrogatories beyond those already before the Court.  If Plaintiffs wish to propound

22   additional interrogatories, they must first obtain leave of Court or a stipulation from Defendant.

23       **K.        Defendant's Objection to Notice of Deposition of Rule 30(b)(6) Witness**

24           On April 27, 2022, Plaintiffs served a notice of deposition for Defendant's Rule

25   30(b)(6) person most knowledgeable witness(es).  See ECF No. 49-7 (Exhibit G).  The notice

26   included a number of definitions as well as a list of topics to be discussed at the deposition.  See

27   id.  The deposition was noticed for May 16, 2022, via Zoom.  See id.  According to Plaintiff,

28   Defendant first objected to the deposition date and, after Plaintiffs' counsel repeatedly offered to

17

1    move the deposition to a mutually agreeable date, Defendant's counsel announced that no witness

2    would be produced regardless of the date.  See ECF No. 49, pg. 68; see also ECF No. 49-1

3    (Exhibit A).  According to the meet-and-confer emails at Exhibit A, Defendant took the position

4    that Plaintiffs were required to rely on the deposition of its Rule 30(b)(6) witness taken in another

5    action (the Fuller deposition in the Papasan class action, which involves the same products

6    liability claims).  See ECF No. 49-1, pg. 10.

7            Plaintiffs contend that there is no obligation to clear a proposed deposition date

8    prior to service a notice of deposition.  See ECF No. 49, pg. 68.  Plaintiffs further contend that

9    Defendant's unilateral decision not to produce a Rule 30(b)(6) witness in this case absent a

10   protective order constitutes "an egregious case of stonewalling."  Id.  Defendant argues that it

11   properly "objected" to the deposition notice on numerous grounds, though Defendant does not

12   cite to any formal objection it served on Plaintiffs.  See id. at 69-74.  Specifically, Defendant

13   contends the deposition is improper because: (1) all the categories of examination are irrelevant;

14   (2) the discovery sought is not proportional to the needs of the case (3) the discovery sought is

15   cumulative because Dometic's Rule 30(b)(6) witness already testified at a deposition in the

16   Papasan class action taken by Plaintiffs' counsel in this case; and (4) the deposition notice

17   included a request for documents on insufficient notice.  See id.

18           Dometic's refusal to comply with the deposition notice without first obtaining a

19   protective order was procedurally inappropriate.  Under Federal Rule of Civil Procedure 30(a)(1),

20   a party may take the deposition of another party without leave of Court.  Rule 30(b)(6) specifies

21   procedures for the deposition of a corporate entity through an individual designated by the

22   corporate entity.  Under Rule 37(a)(3), a party may move to compel a deposition after a witness

23   fails to appear and answer questions.  Finally, Rule 26(c) permits a party from whom discovery is

24   sought to seek a protective order.

25           Here, while Dometic now makes several arguments as to why a Rule 30(b)(6)

26   deposition should not be allowed in this case, it did not do so in the context of a motion for a

27   protective order filed before the noticed deposition date.  Absent a protective order, Plaintiff is

28   entitled to have Defendant produce its Rule 30(b)(6) witness upon proper notice.  Defendant's

1    current objections, which are not properly before the Court on a motion for a protective order,

2    should be overruled without prejudice.  Defendant's obligation to produce a Rule 30(b)(6)

3    witness in this case is heightened because Defendant otherwise refuses to answer interrogatories

4    seeking the identities of corporate witnesses.

5           Plaintiffs' motion to compel is granted as to the notice of deposition of Dometic's

6    Rule 30(b)(6) witness.  Absent a protective order, Dometic is directed to produce its witness

7    pursuant to proper notice of deposition served by Plaintiffs.

8           **L.     Discovery Seeking NHTSA Draft Reports**

9           Plaintiffs state that, in the context of the Papasan class action, Defendant produced

10   a series of draft reports filed with the National Highway Transportation Safety Administration

11   (NHTSA) in connection with a 2006 recall, as well as final public versions of the NHTSA

12   reports.  See ECF No. 49, pg. 74.  When Plaintiffs' counsel (also counsel in the Papasan action)

13   attempted to depose a witness regarding the drafts, Dometic's counsel "prevented any questioning

14   on the drafts by claiming that they were 'inadvertently produced,' and constituted attorney-client

15   work product material."  Id.  In this case, Plaintiffs specifically seek the drafts in Request for

16   Production No. 23.  See id.  Defendant refused to produce the drafts.  See id.

17          This "common dispute" appears to relate only to Request for Production No. 23.

18   No. 23 seeks:

19          All DOCUMENTS YOU submitted to NHTSA to initiate the 2006
            RECALL and 2008 RECALL, including, but not by way of limitation, all
20          chronologies of events, and all drafts of DOCUMENTS, including
            chronologies, submitted to NHTSA.
21
22          ECF No. 51, pg. 104 (Joint Statement, Amended Vol. 2).

23   In response to No. 23, Defendant objected on the ground that the drafts were protected by the

24   attorney-client and work product privileges.  See id.  Defendant added: "Subject to and without

25   waiving these objections, Dometic will produce all documents and correspondence evidencing

26   communications between Dometic and NHTSA regarding Recall Nos. 06E076 and 0E032."  Id.

27   According to Plaintiffs, Defendants produced only the final reports and none of the drafts.

28   / / /

                                                    19

1  Defendant contends the drafts are protected under the attorney-client privilege.

2  See ECF No. 49, pgs. 77-78.  This argument is persuasive because the drafts were prepared by an

3  outside firm, Barnes & Thornburg, hired by Dometic for purposes of interaction with the NHTSA

4  in connection with two recalls.  See id. at 76; see also Helm v. Alderwoods Grp., Inc., 2010 WL

5  2951871, at *2 n.2 (N.D. Cal. 2010).  Nonetheless, at the hearing it became evident that this issue

6  is intertwined with the issue discussed above at Section F relating to Dr. Buc's testing materials,

7  which were disclosed to the NHTSA.  As indicated above, the Court will accept supplemental

8  briefing on the relevance of these materials and will rule on both Issues F and L by separate order

9  after supplemental brief have been filed.

10

11  **III.  CONCLUSION**

12  Accordingly, IT IS HEREBY ORDERED that:

13  1.  Plaintiffs' motion to compel, ECF No. 41, is granted in part and denied in

14  part as follows:

15  a.  Defendant's Objection No. 9 is overruled.

16 17  b.  Defendant's general objection to definitions is overruled without prejudice to such objections being raised in the context of specific discovery requests.

18 19 20  c.  Defendant's general objection to discovery requests seeking the identities of witnesses, particularly corporate directors, officers and shareholders, is sustained subject to Plaintiffs propounding more tailored requests and further meet-and-confer efforts.

21 22  d.  Defendant's general objection to discovery requests seeking information regarding similar incidents is sustained subject to further meet-and-confer efforts discussing more narrowly tailored requests as to time and description.

23 24  e.  Defendant's general objection regarding proportionality is overruled subject to further good faith meet-and-confer efforts relating to more narrowly tailored discovery requests.

25 26  f.  The Court defers ruling on Defendant's objections concerning Dr. Buc's testing materials subject to supplemental briefing.

27  g.  Plaintiffs' general objection regarding possession, custody, and control is overruled.

28  / / /

20

h. Plaintiffs' general objection to reference to documents to respond to interrogatories is overruled subject to the parties' obligation to strictly comply with Federal Rule of Civil Procedure 33(d)(1) when referencing documents to answer an interrogatory.

i. Defendant's general objection to the use of the word "all" in Plaintiff's various requests for production is overruled subject to further meet-and-confer efforts and additional tailoring of Plaintiff's discovery requests.

j. Defendant's objection to the number of interrogatories already served is overruled as waived.  Plaintiffs may not, however, propound any new interrogatories absent stipulation or leave of Court.

k. Plaintiffs' motion to compel is granted as to Dometic's Rule 30(b)(6) witness.

l. The Court defers ruling on Defendant's objections concerning NHTSA drafts subject to supplemental briefing on the related issue of Dr. Buc's testing materials, which were provided to the NHTSA.

2. The parties are directed to meet and confer in a face-to-face setting, which may include a Zoom conference, regarding the 81 specific discovery requests at issue in Plaintiffs' motion to compel.  This face-to-face conference shall occur on or before August 19, 2022.

3. Supplemental briefing ordered herein shall proceed as follows:  Plaintiffs' supplemental brief is due by August 3, 2022; Defendant's supplemental brief is due by August 17, 2022; Plaintiffs may file a reply by August 24, 2022.

Dated:  July 29, 2022

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

21