# EXHIBIT B

Case 2:20-cv-01975-DAD-DMC   Document 62-3   Filed 08/12/22   Page 1 of 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:16-cv-22482-RNS

BRANDY VARNER, MICHAEL LINK, ROBERT CORWIN, DONALD SHEPHERD, BOBBI SHEPHERD, MICHAEL ACOSTA AND ANN FIELD, JAMES CRANDALL, JOHN GRANDE, BONITA DUNLAP, MARGOT FOSTER, DAVID KLINCK, MICHAEL BANNING, AND DONALD MUNSEY, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

DOMETIC CORPORATION,

Defendant.

## DECLARATION OF DOUGLAS K. DIETERLY

Pursuant to 28 U.S.C. § 1746, **Douglas K. Dieterly**, declares and states as follows, based on the best of his knowledge and belief:

1. I am an attorney licensed to practice law in the state of Indiana. My license is presently "inactive." At the end of 2013, I retired as a partner from the law firm of Barnes & Thornburg, LLP ("Barnes & Thornburg") after practicing law since 1980. After 1994, my practice was almost exclusively related to the defense of fire-related litigation. If called on to do so, I could and would testify competently to the facts stated below.

2. Beginning in 2001, Barnes & Thornburg served as outside general legal counsel in the United States for Dometic Corporation and its related entities ("Dometic").

1

3. I served as Dometic's national product counsel from 2001 until about 2012, and in that role, served as its primary liability counsel in assessing, defending, and overseeing the defense of its products-related litigation. This included the defense of litigation and potential litigation related to gas absorption refrigerators bearing the Dometic-brand name. I worked with Dometic employees, including but not limited to Pat McConnell, Director of Engineering, Product Safety and Standards; Bruce Boxum, Claims Coordinator; and Brad Sargent, Director of Marketing.

4. In 2005, in response to claims and litigation against Dometic for damages allegedly arising from fires in Dometic-brand refrigerators, Dometic asked me to locate and engage an engineering laboratory to conduct investigation and testing of Dometic-brand refrigerators. The investigation and testing conducted was subject to my oversight in anticipation of litigation, both for the lawsuits already commenced and because of possible future litigation.

5. I interviewed multiple independent testing and consulting firms to carry out the analysis of Dometic-brand refrigerators. At my recommendation, Dometic hired Safety Engineering Laboratories, Inc. and Fire and Materials Research Laboratory LLC to conduct examination and testing on behalf of Dometic.

6. Beginning in late 2005 or early 2006, Barnes & Thornburg, acting as counsel for Dometic, asked and directed the retained engineering and consulting firms to conduct tests for the purpose of evaluating the occurrence of fires in Dometic-brand refrigerators. This was conducted at my direction to assess the exposure and potential liability of the current litigation and anticipated future litigation, and to aid Dometic in its defenses to such litigation.

7. In 2006, Dometic notified the National Highway Traffic and Safety Administration (NHTSA) of a potential safety-related defect. Barnes & Thornburg assisted Dometic in preparing a document, which described the potential safety-related defect, for release to the public.

8. After notifying NHTSA of a potential safety-related defect, I assisted in coordinating additional testing of Dometic brand refrigerators through a second independent engineering consulting firm.

9. Acting on behalf of Dometic, Barnes & Thornburg took a lead role in coordinating the examination, testing, and analysis described above. At the time, we intended and believed that the testing work and documents related thereto would remain confidential and privileged under multiple sources of protection from disclosure, including the work-product doctrine as work undertaken in anticipation of litigation, the attorney-client privilege, and the self-critical (or self-evaluative analysis) privilege.

10. In addition, in response to claims and litigation allegedly arising from fires in Dometic-brand refrigerators, Barnes & Thornburg directed Dometic to establish a policy relating to the investigation of alleged fire claims involving high-value losses and/or other circumstances in which the threat of litigation was a concern, such as when an opposing attorney was involved in the claim.

11. These investigations were conducted for use in assessing the validity of the claims and to assist Dometic in defending itself in connection with anticipated litigation. Many of the claims eventually developed into litigation and the investigations were used to aid and assist Dometic in evaluating liability and exposure. At the time, it was intended and believed that the investigations and any written reports or communications related thereto would remain

confidential and privileged under multiple sources of legal protection, including the work-product doctrine, the attorney-client privilege, and the self-critical (or self-evaluative analysis).

*I declare under penalty of perjury that the foregoing is true and correct.*

Executed pursuant to 28 U.S.C. § 1746 on November 1, 2016,

*[signature]*
Douglas K. Dieterly

DMS 4450097v2

4