IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANE LABBE, et al., | No. 2:20-CV-1975-DAD-DMC |
| Plaintiffs, | |
| v. | <u>ORDER</u> |
| DOMETIC CORPORATION, | |
| Defendant. | |

    Plaintiffs, who are proceeding with retained counsel, bring this products liability action against Dometic Corporation. Pending before the Court is a motion for reconsideration of the prior discovery order. ECF No. 101. Defendant filed an opposition, and Plaintiffs filed a reply and declaration in support of their motion. ECF Nos. 102, 104, 105. The parties gave oral argument at a hearing on the matter. ECF No. 107.

    This Court previously held that the sought material, Dr. Buc's testing and the NHTSA drafts, were protected by attorney-client privilege and the work product doctrine. ECF No. 92. Plaintiffs now request the Court perform an *in camera* review of the material to determine whether it is appropriately shielded from discovery. ECF No. 101 at 2. Plaintiffs also contend that even if the work-product doctrine applies to the testing, the material should be produced because Plaintiffs have substantial need for the material and cannot, without undue hardship, obtain substantially equivalent information by other means. <u>Id.</u> at 7. Finally, Plaintiffs

argue that Defendant waived attorney-client and work product protections by disclosing material to NHTSA. Id. at 5.

For the reasons discussed below, the Court maintains that the sought material is generally shielded from discovery by attorney-client privilege and the work product doctrine. However, Dometic waived protections to any material it disclosed to NHTSA. Finally, Plaintiffs have not justified the arduous process of an *in camera* review of the material.

## I. BACKGROUND

### A. **Plaintiffs' Claims**

This action proceeds on Plaintiffs' first amended complaint. See ECF No. 40. Plaintiffs' factual allegations have been summarized in prior orders and will not be repeated here. Plaintiffs assert the following theories of liability:

| | |
|---|---|
| Count I | Strict Products Liability Based on Design Defect. |
| Count II | Strict Products Liability Based on Failure to Warn. |
| Count III | Negligence Based on Design Defect. |
| Count IV | Negligence Based on Failure to Warn. |
| Count V | Negligence Per Se. |
| Count VI | Negligence Based on Failure to Conduct Adequate Recall. |
| Count VII | Fraud by Concealment. |

See id. at ¶¶ 66-106.

### B. **Procedural History**

Following a hearing before the undersigned on July 20, 2022, on Plaintiffs' prior motion to compel related to the discovery again at issue now, the matter was submitted. On July 29, 2022, the Court issued an order granting Plaintiffs' motion in part, denying the motion in part, and deferring ruling in part subject to supplemental briefing by the parties. See ECF No. 55. Specifically, the Court ordered follows:

    a.    Defendant's Objection No. 9 is overruled.

    b.    Defendant's general objection to definitions is overruled without prejudice to such objections being raised in the context of specific discovery requests.

2

        c.      Defendant's general objection to discovery requests seeking the identities of witnesses, particularly corporate directors, officers, and shareholders is sustained subject to Plaintiffs propounding more tailored requests and further meet-and-confer efforts.

        d.      Defendant's general objection to discovery requests seeking information regarding similar incidents is sustained subject to further meet-and-confer efforts discussing more narrowly tailored requests as to time and description.

        e.      Defendant's general objection regarding proportionality is overruled subject to further good faith meet-and-confer efforts relating to more narrowly tailored discovery requests.

        f.      The Court defers ruling on Defendant's objections concerning Dr. Buc's testing materials subject to supplemental briefing.

        g.      Plaintiffs' general objection regarding possession, custody, and control is overruled.

        h.      Plaintiffs' general objection regarding possession, custody, and control is overruled.  Plaintiffs' general objection to reference to documents to respond to interrogatories is overruled subject to the parties' obligation to strictly comply with Federal Rule of Civil Procedure 33(d)(1) when referencing documents to answer an interrogatory.

        i.      Defendant's general objection to the use of the word "all" in Plaintiff's various requests for production is overruled subject to further meet-and-confer efforts and additional tailoring of Plaintiff's discovery requests.

        j.      Defendant's objection to the number of interrogatories already served is overruled as waived.  Plaintiffs may not, however, propound any new interrogatories absent stipulation or leave of Court.

        k.      Plaintiffs' motion to compel is granted as to Dometic's Rule 30(b)(6) witness.

        l.      The Court defers ruling on Defendant's objections concerning National Highway Traffic Association (NHTSA) drafts subject to supplemental briefing on the related issue of Dr. Buc's testing materials, which were provided to the NHTSA.

See id. at 20-21.

The July 29, 2022, order directed the parties to meet and confer on or before August 19, 2022, regarding the specific discovery at issue in light of the Court's general rulings, outlined above. See id. at 21.  As to items (f) and (l), the Court directed the parties to submit supplemental briefing.  See id.  Consistent with the briefing schedule established in the July 29, 2022, order, Plaintiffs filed their supplemental brief on August 3, 2022, see ECF No. 56, Defendant filed its supplemental brief on August 18, 2022, see ECF No. 65, and Plaintiffs filed a reply brief on August

24, 2022, see ECF No. 68.

On August 12, 2022, Defendant filed a motion for clarification and/or reconsideration of portions of the Court's July 29, 2022, order. See ECF No. 62. On August 17, 2022, Defendant filed a memorandum in support of its motion for reconsideration. See ECF No. 65. On August 26, 2022, Plaintiffs filed their opposition to Defendant's motion for reconsideration. See ECF No. 71. On September 15, 2022, the Court issued an order vacating the hearing set for September 21, 2022, on Defendant's motion for clarification and/or reconsideration and that matter was submitted for decision with Plaintiffs' related motion to compel and in light of supplemental briefing relating to items (f) and (l) outlined in the July 29, 2022, order. See ECF No. 72.

On March 31, 2023, the undersigned issued an order addressing these pending motions. See ECF No. 82. The undersigned also ordered certain documents relating to the pending discovery motions to be filed under seal. See ECF No. 83. Relevant here, the undersigned ordered that Defendant's objections based on the attorney-client and work product privileges had been waived by failure to submit a privilege log. See ECF No. 82. The undersigned set a deadline for Defendant to produce discovery responses. See id.

Thereafter, Defendant sought reconsideration of the undersigned's March 31, 2023, order by the District Judge. See ECF No. 84. On June 14, following briefing and submission without oral argument, the District Judge issued an order resolving Defendant's motion for reconsideration. See ECF No. 91. The District Judge vacated the deadline set for Defendant to produce discovery responses pursuant to the March 31, 2023, order, and referred the matter back to the undersigned for further consideration of the merits of Defendant's privileges objections. See id.

Upon consideration of the merits of Defendant's privileges objections, the Court found that the material was shielded from discovery. ECF No. 92. Plaintiffs then filed the current motion for reconsideration. ECF No. 101.

///

///

///

///

## II.  DISCUSSION

**A.  Dr. Buc's testing and the NHTSA drafts are relevant for purposes of discovery**

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  "Relevance for purposes of discovery is defined very broadly."  Garneau v. City of Seattle, 147 F.3d 802, 812 (9th Cir. 1998).  Determinations of relevance for discovery purposes depend on the unique facts of each case.  Liew v. Breen, 640 F.2d 1046, 1049 (9th Cir. 1981).

At oral argument Dometic protested that Dr. Buc's testing and the NHTSA drafts are not relevant because they do not prove or disprove a disputed fact.  The testing and drafts establish that the Plaintiffs' refrigerator was at risk of starting a fire, which is a fact that Dometic readily concedes.  Dometic contends that because it is not planning to argue that the refrigerator was not at risk of starting a fire, the documents are not relevant.  Dometic maintains it will not use the material at trial.

The subject information – Dr. Buc's testing and the NHTSA drafts – lies at the heart of Plaintiffs' case.  Plaintiffs must show that Dometic's refrigerator could catch fire to prove their case, and the sought information proves exactly that.  Dometic cannot shield the documents from discovery by conceding the issue, as discovery may be sought for all information relevant to a party's claim – discovery is not restricted to facts in dispute.  See Fed. R. Civ. P. 26(b)(1).  Because the material is at the heart of Plaintiff's case, they are relevant even if Dometic is willing to concede that its refrigerators could catch fire.

**B.  Attorney-client privilege applies to the sought material because the material is communications made for the purpose of giving legal advice between Dometic, its counsel, and its counsel's agent**

Attorney-client privilege protects confidential communications between attorneys and clients that are made for the purpose of giving legal advice.  See United States v. Sanmina Corp., 968 F.3d 1107, 1116 (9th Cir. 2020).  "[A]ttorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice."  United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011).  Underlying facts in a

communication are not normally covered by the attorney-client privilege. See Upjohn Co. v. United States, 449 U.S. 383, 396 (1981). The holding in Upjohn affirms that fact-finding which pertains to legal advice is protected. Id. at 390-91; United States v. Rowe, 96 F.3d 1294, 1297 (9th Cir. 1996).

When Dometic hired Barnes & Thornburg LLP as counsel for the purpose of receiving legal advice about product liability issues with their refrigerators, they established an attorney-client relationship. Their communications then became subject to attorney-client privilege. When Barnes & Thornburg LLP engaged Dr. Buc to test the refrigerators, Dr. Buc's testing was designed to discover facts that would inform Barnes & Thornburg LLP on what legal advice to give to their client. Dr. Buc became a third party engaged to assist in providing legal advice. Dr. Buc's communications with Barnes & Thornburg LLP and Dometic were then also subject to attorney-client privilege. Dr. Buc's communications contained underlying facts, the testing, but the testing is plainly fact-finding which pertains to legal advice and so is protected by attorney-client privilege. The NHTSA drafts were legal advice on how to deal with an administrative agency between Dometic and its counsel, and so it too is protected by attorney-client privilege.

At oral argument, Dometic clarified that it does not claim that all its communications surrounding Dr. Buc's testing are subject to attorney-client privilege. Dometic argues that to the extent some of the communications are not protected by attorney-client privilege, they are nonetheless protected by the work product doctrine.

    **C.**     **The work product doctrine protects Dr. Buc's testing because the testing was done in anticipation of litigation; the work product doctrine does not protect the NHTSA drafts**

The work product doctrine protects documents when it can be fairly said that the documents were created because of anticipated litigation and the documents would not have been created in substantially similar form but for the prospect of litigation. See In re Grand Jury, 23 F.4th 1088, 1092 (9th Cir. 2021). The primary concern is to "preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries." Id. at 1093 (quoting United States v. Adlman, 134 F.3d

1194, 1197 (2d Cir. 1998)). Work product doctrine shields mental impressions, conclusions, opinions, and legal theories. See Am. C.L. Union of N. California v. United States Dep't of Just., 880 F.3d 473, 483 (9th Cir. 2018) (citing Fed. R. Civ. P. 26(b)(3)). The doctrine's protections extend to material prepared by agents for counsel. United States v. Torf (In re Grand Jury Subpoena), 357 F.3d 900, 906 (9th Cir. 2004). Ultimately, the purpose of the privilege is "to encourage effective legal representation *within the framework of the adversary system* by removing counsel's fears that his thoughts and information will be invaded by his adversary." Id. at 486 (quoting Jordan v. U.S. Dep't of Just., 591 F.2d 753, 775 (D.C. Cir. 1978)). Work product is protected even if it was created for a dual purpose, so long as the "litigation purpose so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole." Torf (In re Grand Jury Subpoena), 357 F.3d 900 at 910.

The purpose of Dr. Buc's testing was for Dometic to be able to better understand its potential liability in future litigation. See ECF No. 49 at 46. Dr. Buc was engaged by Dometic's counsel instead of Dometic itself, which demonstrates its tie to litigation. See ECF 102 at 5. To allow Plaintiffs access to the testing would violate Dometic's zone of privacy which allows it to develop legal theories and strategy with an eye toward litigation. To the extent the testing was also performed to meet Dometic's obligations to NHTSA, the purposes of preparing for NHTSA and preparing for litigation are virtually identical. The preparation for NHTSA and the preparation for litigation both result from the same factual nexus, the defective refrigerators. Because Dr. Buc's testing was performed so that Dometic could prepare for future litigation, it is protected under the work product doctrine.

The NHTSA drafts, however, do not serve Defendants in litigation and are distinguishable from Dr. Buc's testing with respect to the work product doctrine. While the testing shed light on product defects, the drafts have no apparent purpose in preparing for litigation. Defendant admits it "has no intention of relying on the NHTSA [d]rafts as a part of its defense, and it has never disclosed these documents to its experts in this or any other case." ECF No. 49, pg. 77. Because the documents were not created in anticipation of litigation, they are not protected by the work product doctrine.

**D.      Plaintiffs have not justified piercing the work product doctrine's protections**

The work product doctrine does not provide absolute protection – it may be pierced through a showing of unique necessity.  See United States v. Sanmina Corp., 968 F.3d 1107, 1125 (9th Cir. 2020).  The doctrine contains two types of work product with different levels of protection: non-opinion work product and opinion work product.  See id.  Discovery of non-opinion work product requires a showing of substantial need and inability to obtain the equivalent without undue hardship.  Id. Receiving even greater protection, opinion work product is only discoverable when mental impressions are at issue in a case and the need for the material is compelling.  Id.  Material can contain both non-opinion work product and opinion work product.  See id.

The testing contains data (non-opinion work product), and interpretations and conclusions based on that data (opinion work product).  To obtain the data, Plaintiffs must show that they have a substantial need and are unable to obtain the equivalent without undue hardship.  Sanmina Corp., 968 F.3d at 1125.  In Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252 (3rd Cir. 1993), the Third Circuit examined a situation that mirrors the present issue. OSHA sought discovery of testing on a defective product that was protected by work-product protection.  Id. at 1262-63.  OSHA sought to pierce work product protections by claiming it would be an undue hardship for OSHA to perform the testing itself.  Id.  The Third Circuit held that OSHA did not demonstrate undue hardship merely because a new independent testing would be costly and time-consuming.  Id. OSHA would have needed to show more than simply it would take significant resources to demonstrate an undue hardship.  See id.

Here too, Plaintiffs have offered no substantial reason as to why they cannot perform their own testing of the defective product.  Although it may be costly, there has been no showing beyond that it would take significant resources for Plaintiffs do their own testing. Because Plaintiffs can obtain the equivalent to Dr. Buc's testing without undue hardship, the work product doctrine's protections cannot be pierced.

/ / /

/ / /

8

Plaintiffs similarly do not meet the even higher bar for obtaining Dometic's opinion work product. Plaintiffs bring a products liability case, where Dometic's mental impressions are not essential for proving the case; although they may be tangentially related to issues such as punitive damages, such tangential uses alone to not justify piercing the work product doctrine for opinion work product. See Holmgren v. State Farm Mut. Auto. Ins. Co., 976 F.2d 573, 577 (9th Cir. 1992). Otherwise, opinion work product would be discoverable in nearly every case.

### E. Dometic waived protections to any material it disclosed to NHTSA, but further disclosure is not warranted under Federal Rule of Evidence 502(a)

*i. Dometic waived attorney-client privilege over any material disclosed to NHTSA.*

Attorney-client privilege is expressly waived when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public. Bittaker v. Woodford, 331 F.3d 715, 719 (9th Cir. 2003). Any material sent to NHTSA by Dometic was expressly waived, as NHTSA was not bound by attorney-client privilege— in contrast, NHTSA was an administrative agency that was enforcing a recall against Dometic.

*ii. Dometic waived work product doctrine protections over any material disclosed to NHTSA.*

Work product doctrine protections, like other qualified privileges, may be waived. United States v. Sanmina Corp., 968 F.3d 1107, 1119 (9th Cir. 2020). However, the work product doctrine is not as easily waived as is attorney-client privilege. Id. at 1120. Attorney-client privilege is designed to protect confidentiality, so any disclosure is inconsistent with the privilege; the work product doctrine is designed to protect against adversaries, so only disclosure to an adversary is inconsistent with the protection. Id. (citing United States v. Mass. Inst. of Tech., 129 F.3d 681, 687 (1st Cir. 1997)). Disclosing work product to a third party waives work product protection only where the disclosure is made to an adversary in litigation or substantially increased the opportunities for potential adversaries to obtain the information. Id. The key question is whether the disclosure "is inconsistent with the maintenance of secrecy from the

disclosing party's adversary." Id. at 1121 (citing Rockwell Int'l Corp. v. U.S. Dep't of Justice, 235 F.3d 598, 605 (D.C. Cir. 2001)).  Whether secrecy was maintained is a fact-intensive analysis that requires "a consideration of the totality of the circumstances and is ultimately guided by the same principle of fundamental fairness that underlies much of our common law doctrine on waiver by implication." Id. at 122-23.

Dometic conceded at oral argument that there was no expectation of confidentiality for the material sent to NHTSA.  As the regulatory agency that would oversee the recall of the defective product, NHTSA was a potential (if not actual) adversary to Dometic.  Because there was disclosure to an entity where there was no expectation of privacy, Dometic acted inconsistent with the work product doctrine, and so waived its protections to the extent it disclosed information to NHTSA. Such disclosed information is discoverable.

### iii. *Further disclosure is not justified under Federal Rule of Evidence 502(a).*

When a disclosure is made that waives the attorney-client privilege or work product protections in a federal proceeding or to a federal office or agency, the waiver extends to an undisclosed communication or information if (1) the waiver is intentional, (2) the disclosed and undisclosed communications or information concern the same subject matter, and (3) they ought in fairness be considered together.  A subject-matter waiver is appropriate only in "those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502 Advisory Committee Note.

Plaintiffs suggest that because Dometic previously disclosed limited information to NHTSA, a federal agency, Dometic is now obligated to provide all its information. ECF No. 101 at 5-6.  But a subject matter waiver is appropriate only where fairness requires it to prevent a selective and misleading presentation of evidence.  Dometic has pledged that it will not use any of Dr. Buc's testing or the NHSTA drafts at trial in this case.  Because there is no threat of misleading evidence due to partial disclosure, Rule 502 does not justify further disclosure.

/ / /

/ / /

10

### F. Plaintiffs' request for an *in camera* review of the withheld discovery is not justified because there is no factual basis to suggest the protected material is discoverable

Upon receiving a request to perform an *in camera* review, the Court must consider (1) whether the moving party has met its threshold burden, and (2) whether the Zolin factors (enumerated below) support such a review. United States v. Zolin, 491 U.S. 554, 572 (1989). Ultimately, whether to engage in *in camera* review rests in the sound discretion of the Court. Id.

To justify an *in camera* review, the moving party must meet its threshold burden of showing "a factual basis adequate to support a good faith belief by a reasonable person" that the reviewed material would be discoverable. See id. The standard is not a stringent one— a lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome a privilege. Id. The standard strikes a balance between the intrusion imposed and the likelihood that *in camera* review may reveal discoverable evidence. In re Grand Jury Investigation, 974 F.2d 1068, 1072-73 (9th Cir. 1992).

If the threshold burden is met, the Court must then exercise its discretion in light of the Zolin factors. Zolin, 491 U.S. at 572; id. The Zolin factors provide that before engaging in an *in camera* review, the Court must consider: (1) the volume of materials the Court has been asked to review, (2) the relative importance to the case of the alleged privileged information, and (3) the likelihood that the evidence produced through an *in camera* review, together with other available evidence then before the court, will establish that the evidence is discoverable. Zolin, 491 U.S. at 572.

Plaintiffs' request for an *in camera* review arises in conjunction with the remand of the Court's previous order that the sought material be disclosed for failure to provide a privilege log, and because Dometic claims that only some of its material is protected under the attorney-client privilege, while concurrently claiming all of its material is protected under the work product doctrine. ECF No. 101 at 6. Neither reason is sufficient. To reach their threshold burden, Plaintiffs must show "a factual basis adequate to support a good faith belief by a reasonable person" that the reviewed material would be discoverable. Zolin, 491 U.S. at 572. Plaintiffs have offered no factual basis whatsoever.

The Court's previous order based on waiver for failure to provide a privilege log has no bearing on whether the material is discoverable based on its content.  Similarly, that Dometic is claiming different protections to different extents does not provide a factual basis that supports the material itself is discoverable. The Court does not need to pour over the fourteen thousand pages of documents sought merely because different protections are being claimed over different parts of the documents.  Because Plaintiffs have offered no factual basis that the documents should not be shielded from discovery, let alone a factual basis adequate to support a good faith belief by a reasonable person, an *in camera* review is not justified.

### III.  CONCLUSION

Accordingly, IT IS HEREBY ORDERED as follows:

1. Plaintiffs' motion for reconsideration, ECF No. 101, is GRANTED in part.
2. The Court's prior discovery order is modified to reflect that any material Dometic shared with NHTSA is discoverable, but otherwise the Dr. Buc's testing and the NHTSA drafts are shielded from discovery.
3. Plaintiffs' request for an *in camera* review is denied.

Dated:  January 29, 2024

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE