IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANE LABBE, et al., | No. 2:20-CV-1975-DAD-DMC |
| Plaintiffs, | |
| v. | <u>ORDER</u> |
| DOMETIC CORPORATION, | |
| Defendant. | |

Plaintiffs, who are proceeding with retained counsel, bring this civil action alleging products liability. The matter was removed from the Plumas County Superior Court under this Court's diversity jurisdiction. <u>See</u> ECF No. 1. Pending before the Court are Defendant's motions for a protective order and to quash a deposition subpoena. <u>See</u> ECF Nos. 114, 115. The parties have not filed a joint statement as required under Local Rule 251, but Plaintiffs have filed an opposition to both motions. <u>See</u> ECF Nos. 116, 117. Defendant has filed a reply. <u>See</u> ECF No. 118.

/ / /

/ / /

/ / /

/ / /

/ / /

# I. BACKGROUND

## A. Procedural History

Following removal of this matter from the Plumas County Superior Court, Defendant filed a motion to dismiss as well as a motion to strike. See ECF Nos. 11 and 12. On March 22, 2022, the District Judge issued an order denying Defendant's motion to dismiss and granting Defendant's motion to strike in part. See ECF No. 38. Specifically, the District Judge concluded that the introduction section to the original complaint was needlessly sensationalistic. See id. at 9. The District Judge orders that paragraphs one and two, and the first sentence of paragraph three, be stricken. See id. at 10. Plaintiffs then filed a first amended complaint on April 22, 2022. See ECF No. 40. Defendant filed its answer on May 6, 2022. See ECF No. 42.

Pursuant to the most recent scheduling order dated October 27, 2022, non-expert discovery closed on October 27, 2023, expert discovery cuts off on March 29, 2024, and dispositive motions are due by June 7, 2024. See ECF No 81. On November 29, 2023, the schedule was modified in part pursuant to the parties' stipulation. See ECF No. 108. Specifically, non-expert discovery was extended for 30 days for the limited purpose of allowing Dometic to produce documents in response to Plaintiff's requests for production of documents regarding substantially similar fire claims occurring after the Labbe fire; non-expert discovery was extended for 30 days for the limited purpose of allowing Dometic to serve supplemental verified responses to Plaintiffs' first set of interrogatories, nos. 3, 4, 5, 6, and 8; non-expert discovery extended for the limited purpose of allowing the depositions(s) of Dometic's Rule 30(b)(6) witness(es) on or before January 17, 2024; and non-expert discovery was extended to allow for the deposition of Ben White, if permitted, on or before February 17, 2024. See id.

## B. Plaintiffs' Allegations

Plaintiffs are Lane Labbe, Lisa Labbe, Jane Labbe, and April Tomczak. See ECF No. 40, ¶¶ 4 and 5. Defendant is a Delaware corporation. See id. at ¶ 6. According to the first amended complaint, in July 2019 Plaintiffs Lane and Lisa Labbe purchased an RV from a private party and the RV was equipped with a Dometic 2-door Model RM 2652 gas absorption refrigerator. See id. at ¶ 50. Between the date of purchase and October 25, 2019, Plaintiffs used

the RV without problem. See id. at ¶ 51. Plaintiffs state that they own an operate a horse boarding and training facility – New England Rach – and would park the RV under the eaves of the hay barn and rent it out to local students who lived on the property and worked in the horse training facility. See id. at ¶ 52.

On October 25, 2019, Plaintiff April Tomczak was a student at Feather River Community College and was renting the RV as student housing. See id. at ¶ 53. The RV was connected to a 30-amp electrical service in the hay barn. See id. The Dometic refrigerator was on and set to "auto." See id. Plaintiff Tomczak was using her hairdryer when it shut off. See id. At the time, she also noticed that her phone was not charging. See id. As Plaintiff Tomczak entered the living room of the RV, she smelled an "odd" odor and noticed smoke coming from the crack between the refrigerator and the cabinet. See id. She did not see any smoke coming from any other area of the RV except the refrigerator. See id. She opened the refrigerator and saw that the smoke was coming from inside. See id. The smoke quickly intensified, and Plaintiff Tomczak left the RV. See id. As Plaintiff Tomczak passed the outside of the RV, she heard popping and cracking noises coming from the refrigerator vents. See id.

A fire then spread from the refrigerator cabinet up and out of the top vent of the RV and was starting to burn the eaves of the hay barn. See id. at 54. After 911 was called, the fire spread rapidly, igniting the hay in the hay barn. See id. The fire then spread to nearby trees and a utility pole. See id. The Quincy Volunteer Fire Department responded and extinguished the fire. See id. Plaintiffs allege that the Quincy Volunteer Fire Department investigated the cause of the fire, which was determined to be the Dometic gas absorption refrigerator in the RV. See id. at ¶ 58.

Plaintiffs assert the following theories of liability:

| | | |
|---|---|---|
| Count I | Strict Products Liability Based on Design Defect. |
| Count II | Strict Products Liability Based on Failure to Warn. |
| Count III | Negligence Based on Design Defect. |
| Count IV | Negligence Based on Failure to Warn. |
| Count V | Negligence Per Se. |

3

|   |   |   |
|---|---|---|
| Count VI | | Negligence Based on Failure to Conduct Adequate Recall. |
| Count VII | | Fraud by Concealment. |

See id. at ¶¶ 66-106.

## II. DISCUSSION

The current motions concern the deposition of Ben White, who is the former Assistant General Counsel for Dometic. As indicated above, the parties stipulated and the Court ordered on November 29, 2023, that, if permitted, Mr. White's deposition would occur on or before February 17, 2024. Plaintiffs served a deposition subpoena on Mr. White on January 25, 2024. See ECF No. 115, pg. 2. Neither side has provided the Court with a copy of the deposition subpoena. Defendant seeks a protective order precluding Mr. White's deposition as well as an order quashing the January 25, 2024, deposition subpoena. See ECF Nos. 114, 115.

Defendant contends that the Shelton factors apply to determine whether a party's attorney may be deposed. See ECF No. 114. In Hickman v. Taylor, the Supreme Court held that requiring a party's attorney to testify compromises the standards of the legal profession. See 329 U.S. 495, 513 (1947). Thus, there is a general presumption that attorneys should not be called to testify in cases where their client is a party. See Fausto v. Credigy Servs. Corp., 2008 WL 4793467, *1 (N.D. Cal. 2008). In Shelton v. American Motors Corp., the Eighth Circuit fashioned a three-part test allowing the deposition of a party's attorney is: (1) no other means exist to obtain the information; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case. See 805 F.2d 1326, 1327 (8th Cir. 1986).

Though the Ninth Circuit has not ruled on the matter, the heightened Shelton criteria are widely applied by courts in this district and throughout the Ninth Circuit. See, e.g., Riverbank Holding Co., LLC v. New Hampshire Ins. Co., 2012 WL 4748047, at *2 (E.D. Cal. 2012) (applying Shelton); Rhodes v. Sutter Gould Med. Found., 2014 WL 2091767, at *1 (E.D. Cal. 2014) (same); Doubleday v. Ruh, 149 F.R.D. 601, 614 (E.D. Cal. 1993) (applying Shelton); Johnson v. Couturier, 261 F.R.D. 188, 193 (E.D. Cal. 2009) (same); LionHead Global No 2, LLC v. Todd Reed, Inc., 2020 WL 10692515, at *2 (C.D. Cal. 2020); ATS Prod., Inc v. Champion

1  Fiberglass, Inc., 2015 WL 3561611, at *3 (N.D. Cal. 2015) (same); American Cas. Co. of

2  Reading, Pa. v. Krieger, 160 F.R.D. 582, 588 (S.D. Cal. 1995) (same).

3          Citing Pamida Inc. v. E.S. Originals, Inc., 281 F.3d 728 (8th Cir. 2002), Plaintiffs

4  argue that Shelton has been limited to cases where the deposition of a party's attorney is sought

5  concerning pending litigation. See ECF No. 116, pg. 10. According to Plaintiffs, when as here a

6  party's attorney is called to provide percipient witness testimony regarding matters preceding

7  pending litigation or regarding matters in prior closed litigation, the Court applies the traditional

8  Rule 26(b)(1) analysis for protective orders. See id.

9          In its moving papers, Dometic provided the following background concerning Mr.

10 White's role:

> Dometic hired Attorney White to serve in the role of Assistant General Counsel in 2016, shortly after *Papasan* and another putative class action were filed against Dometic pertaining to its gas absorption refrigerators. See Ex. A ("Decl. of D. Fuller") ¶ 3. Prior to hiring Attorney White, Dometic relied on non-attorneys to record any personal injury or property damage claims that were reported to the company. *Id.* ¶ 4. Dometic then relied on its general counsel Mr. Dan Fuller to manage and oversee these claims and to determine how to handle each claim. *Id.* This process proved to be inefficient and also imposed significant burden on Mr. Fuller. *Id.* Accordingly, Dometic hired Attorney White to streamline the claims handling process and to reduce the burden on Dometic's general counsel. *Id.* ¶ 5. In his role as Assistant General Counsel, Attorney White would collect and document data about the personal injury and property claims that were reported to Dometic, he would analyze and investigate the claims (often in conjunction with outside consultants), and he would then provide advice on how to proceed with each claim (*e.g.*, whether to settle or defend) based on his evaluation of the law and the facts. See Ex. B ("Decl. of B. White") ¶ 4. In so doing, Attorney White acted solely in the role of an attorney for Dometic and was not involved in general business matters or management decisions. *Id.* ¶ 6. Indeed, the very purpose of his position was to assess the strengths and weaknesses of each claim, to assess Dometic's potential liability and exposure, and to advise Dometic on how to handle the claims based on his legal knowledge. *Id.* ¶ 5; *see also* Decl. of D. Fuller at ¶ 5. Attorney White worked at the company when this particular claim was reported to Dometic, and he was initially involved in overseeing and handling the claim. Decl. of B. White ¶ 7. However, Attorney White eventually left the company in 2019. Decl. of D. Fuller at ¶ 6. At that time, Dometic's general counsel was able to resume his role in overseeing the claims and therefore did not hire a replacement for Attorney White. *Id.*

26         ECF No. 114, pgs. 3-4.

27 ///

28 ///

Relying on the June 4, 2019, deposition testimony of Dometic employee Chris Jackson (excerpts of which are attached to the declaration of Plaintiffs' counsel Terrence Beard at Exhibit 1), Plaintiffs offer the following regarding Mr. White's role:

> Dometic has had two claims coordinators prior to hiring Mr. White in 2016 – Bruce Boxum and Chris Jackson. Mr. Boxum and Mr. Jackson were both non-attorneys who handled the day to day activities regarding, among other things, fire claims involving Dometic-branded gas absorption refrigerators, collecting and entering fire claim data into Dometic's Access database; selecting and supervising fire origin and cause investigators; interacting with personnel from the warranty/recall departments; interacting with claimants and insurance companies; and preparing reports on fire claims. Mr. Jackson originally reported to Mr. Fuller, Dometic's General Counsel, and then to Mr. White, when he was hired in 2016.
>
> When Mr. White was hired, he took over the reporting duties, but left all remaining claims coordinator duties with Mr. Jackson. Mr. Jackson continued to perform these duties until he was unceremoniously terminated by Dometic on December 29, 2017. At that point in time, Mr. White took over the non-attorney claims handling activities that Mr. Jackson had been performing. Mr. White continued to perform these non-attorney claims handling activities regarding Dometic-branded gas absorption refrigerator fire claims at least through the date of the fire at issue in this case.

ECF No. 116, pgs. 3-4 (footnote citations to excerpts of Mr. Jackson's deposition omitted).

Regardless of whether Mr. White worked purely on non-attorney claims handling, or purely on attorney-related work, or some combination of the two, it is clear that Mr. White has never been counsel of record for the current pending litigation. In fact, Mr. White left Dometic in 2019, just shortly after the time of the fire in this case, which occurred in October 2019. Thus, the Court finds that the heightened Shelton test does not apply. See EpicentRx, Inc. v. Carter, 2020 WL 6158939 at *3 (S.D. Cal. 2020); Textron Fin. Corp. v. Gallegos, 2016 WL 4169128, (S.D. Cal. 2016); ATS Prod., Inc. v. Champion Fiberglass, Inc., 2015 WL 3561611, at *4 (N.D. Cal. 2015); Dorroh v. Deerbrook Ins. Co., 2012 WL 4364149 (E.D. Cal. 2012).

Pursuant to Federal Rule of Civil Procedure 26(c), a party or any person from whom discovery is sought may move for a protective order which the Court may grant on good cause shown to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Fed. R. Civ. P. 26(c)(1). The party seeking the protective order – in this

case Dometic – bears the burden of showing specific prejudice or harm if the protective order is not granted. See Phillips ex rel. Ests. Of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1210-11 (9th Cir. 2002). It is not grounds to preclude a deposition by way of a protective order merely because the information sought may be protected by the attorney-client privilege. See Resolution Tr. Corp. v. Sands, 141 F.R.D. 616, 620 (N.D. Texas 1993). Rather, the appropriate procedure is to preserve any such objections at the deposition. See id. Likewise, lack of knowledge is not a proper basis for a Rule 26(c) protective order given that depositions are, by their nature, exploratory and the deposition allows the parties to establish a record of a witnesses' lack of knowledge.

Under the Rule 26 standard requiring a showing of good cause for protective orders, Defendant's motions fail. Mr. Fuller – Dometic's general counsel – handled claims processing. When Mr. White was hired, he took over claims processing handling responsibilities from Mr. Fuller. Mr. White was handling claims processing during the time Plaintiffs' claim in this case was filed. Plaintiffs took Mr. Fuller's deposition. Plaintiffs now seek to take Mr. White's deposition in order to fill in the gaps in claims handling after Mr. Fuller handed responsibility to Mr. White. The Court agrees that allowing Mr. White's deposition is appropriate. Any burden to Mr. White is minimal given the parties' agreement that the deposition will be conducted by remote means and counsels' representations that the deposition will, in all likelihood, be brief. To the extent Mr. White claims lack of knowledge or privilege, those issues are better resolved by way of objections at the time of the deposition. In this regard, the Court will make itself available to resolve objections during the deposition, if the parties provide notice in advance of the date and time of the White deposition.

For these same reasons, the Court also finds that an order quashing the subpoena for Mr. White's deposition is not warranted.

/ / /

/ / /

/ / /

/ / /

### III.  CONCLUSION

Accordingly, IT IS HEREBY ORDERED as follows:

    1.    Defendant's motion for a protective order, ECF No. 114, is DENIED without prejudice to Defendant's ability to interpose appropriate objections.

    2.    Defendant's motion to quash, ECF No. 115, is DENIED.

    3.    Plaintiffs may take the deposition of Mr. White on or before May 8, 2024.

Dated:  March 7, 2024

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE