UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LANE LABBE', et al.,

        Plaintiffs,

    v.

DOMETIC CORPORATION,

        Defendant.

No. 2:20-cv-01975-DAD-DMC

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

(Doc. Nos. 160, 162)

This matter came before the court on December 1, 2025 for a hearing on defendant's motion for summary judgment filed on July 25, 2025 and amended on July 26, 2025. (Doc. Nos. 160, 162.) Attorney Terrence A. Beard appeared on behalf of plaintiffs. Attorney Erica Rutner appeared on behalf of defendant. For the reasons explained below, the court will grant defendant's motion for summary judgment in part.

## BACKGROUND

This case arises from a fire in a recreational vehicle ("RV") leased by plaintiffs Lane Labbe, Lisa Labbe, and June Labbe to plaintiff April Tomczak which was allegedly caused by a defective refrigerator manufactured by defendant Dometic Corporation.

/////

/////

1

A.    **Factual Background**[1]

Defendant is a seller of gas absorption refrigerators throughout the United States. (SDF at ¶ 1.) These refrigerators are typically used within RVs and installed in those vehicles as original equipment. (*Id.* at ¶ 2.) Defendant contends that it first learned of reports of fires in some number of its refrigerators in 2005, though plaintiffs contend that defendant learned of such reports earlier. (*Id.* at ¶ 8.) Defendant conducted testing to determine under what circumstances their refrigerator products could cause a fire and determined that a cooling unit leak within the refrigerator could potentially lead to a fire.[2] (*Id.* at ¶¶ 9, 10.) Accordingly, defendant announced a recall of some number of its refrigerators in 2006 and, in 2008, subsequently expanded that recall to ten refrigerator models manufactured between March 1997 and September 2006. (*Id.* at ¶¶ 11–13.) In total, the recalls affected over 1.6 million refrigerators. (*Id.* at ¶ 14.) As part of this recall, defendant issued public defect notifications stating that there was a safety issue with their refrigerators stemming from the release of a cooling solution in the area of the boiler. (*Id.* at ¶ 15.) Defendant determined that two issues in their refrigerators could lead to this kind of leak, specifically an oversized heating element and certain welding inconsistencies during the manufacturing of the refrigerators. (*Id.* at ¶ 17.) Defendant released a "Safety Remedy" for the affected refrigerators, which it contends addressed these two issues, though plaintiffs dispute the efficacy of that remedy. (*Id.* at ¶¶ 18, 19.)

Defendant exclusively sells its refrigerators to RV manufacturers and dealers and accordingly does not have records of the sales made by those intermediaries to consumers. (*Id.* at ¶ 34.) Defendant maintains that these manufacturers do not universally keep records identifying

---

[1] This factual background is undisputed, except where otherwise noted, and is derived from the undisputed facts as stated by defendant and as responded to by plaintiffs (Doc. No. 171 at 1–31 ("SDF")); plaintiffs' statement of further undisputed material facts as stated by plaintiffs and responded to by defendant (Doc. No. 175 ("PDMF")); as well as the exhibits attached to the pending motions.

[2] Plaintiffs dispute the efficacy of this testing, the description of this flaw in defendant's statement of facts, and whether defendant accepted the results of this testing in 2006. (SDF at ¶ 10.) None of these purported disputes are relevant for purposes of resolving the pending motion for summary judgment.

which particular refrigerator was installed in a particular RV, though plaintiffs contend that at least some such manufacturers create and maintain a build sheet for each RV where they itemize installed items by serial number. (*Id.* at ¶ 35.) To conduct its recall, defendant sent out approximately 3 million recall notices for the recall population of 1.6 million refrigerator units by sending notices to any consumer owning any RV sold by one of the manufacturers that defendant typically did business with. (*Id.* at ¶ 36.)

In or about July 2019, plaintiffs purchased a used RV in which one of defendant's refrigerators had been installed. (*Id.* at ¶ 38.) The refrigerator's serial number indicated that it was manufactured in 2002 and therefore included in the recall population. (*Id.* at ¶ 39.) Plaintiffs did not receive notice of the recall and it is disputed whether plaintiffs' predecessors received the notice. (*Id.* at ¶ 40.) It is undisputed that plaintiffs' refrigerator was not retrofitted with the Safety Remedy. (*Id.* at ¶ 41.) On October 25, 2019, plaintiff Tomczak was in the RV and found that her hairdryer had stopped working and her phone was not charging. (*Id.* at ¶¶ 42, 43.) She testified at her deposition that she saw smoke coming from the cracks around the refrigerator, exited the RV, and subsequently heard crackling and popping noises coming from the RV. (*Id.* at ¶ 44.) The RV caught on fire and the Quincy Fire Department extinguished it. (*Id.* at ¶ 46.) Plaintiffs and defendant hired fire cause and origin experts, with plaintiffs' experts concluding that the fire created in the RV was caused by a leak in plaintiffs' refrigerator. (*Id.* at ¶¶ 49, 51.) Defendant's expert concluded that the cause of the fire was undetermined based on his analysis.[3] (*Id.* at ¶ 52.)

**B.      Procedural History**

On July 14, 2020, plaintiffs Lane Labbe, Lisa Labbe, Jane Labbe, and April Tomczak filed the complaint initiating this civil action in the Plumas County Superior Court. (Doc. No. 1-2 at 9.) On October 2, 2020, defendant removed the action to this federal court. (Doc. No. 1.) On

---

[3] Plaintiffs assert that this fact is disputed because the analysis conducted by defendant's expert was defective in several respects. (SDF at ¶ 52.) The evidence that plaintiffs cite, however, does not dispute that defendant's expert drew a conclusion that the origin of the fire could not be determined, only whether his conclusion was reliable. Accordingly, the court treats this fact as stated to be undisputed.

March 22, 2022, the previously assigned district judge denied defendant's motion to dismiss and granted in part defendant's motion to strike certain paragraphs from the complaint.  (Doc. No. 38.)  On April 22, 2022, plaintiffs filed their operative first amended complaint ("FAC").  (Doc. No. 40.)  In their FAC, plaintiffs assert the following seven claims:  (1) strict product liability on a theory of design defect; (2) strict product liability on a theory of failure to warn; (3) negligence; (4) negligent failure to warn; (5) negligence *per se*; (6) negligent failure to conduct an adequate recall or retrofit of a defective product; and (7) fraud by concealment.  (Doc. No. 40 at 42–50.)  On August 25, 2022, this action was reassigned to the undersigned.  (Doc. No. 69.)

On November 6, 2024, plaintiffs filed two motions *in limine* to exclude expert reports pursuant to Federal Rule of Evidence 702 under the standard identified by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  (Doc. Nos. 135, 137.)  Also on November 6, 2024, defendant filed a motion for summary judgment and two motions to exclude expert reports pursuant to Federal Rule of Evidence 702.  (Doc. Nos. 139, 140, 141.)  On November 7, 2024, the court denied defendant's motion for summary judgment without prejudice because that motion failed to comply with the meet and confer requirement in the court's standing order.  (Doc. Nos. 70, 142.)  On November 8, 2024, the parties filed a stipulation in which they requested the court rule on the pending motions to exclude expert reports prior to the renewal of any motion for summary judgment.  (Doc. No. 143.)  Accordingly, the court ordered that any motion for summary judgment should be filed within 30 days of the date of entry of the court's ruling on the motions to exclude expert reports.  (Doc. No. 145.)  On June 25, 2025, the court granted in part and denied in part the various motions to exclude expert reports.  (Doc. No. 158.)

On July 25, 2025, defendant filed the pending motion seeking summary judgment in its favor, and on July 26, 2025, defendant filed an amended motion for summary judgment.  (Doc. Nos. 160, 162.)  On August 21, 2025, plaintiffs filed an opposition to the pending motion and on September 4, 2025, defendant filed its reply thereto.  (Doc. Nos. 172, 174.)

/////

/////

/////

4

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). If the moving party will bear the burden of proof on an issue at trial, "the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, after adequate time for discovery and upon motion, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd sub nom. Richards v. Neilsen Freight Lines*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87 (citations omitted).

/////

6

**DISCUSSION**

**A.      Plaintiffs' Post-Sale Claims (Claims 4, 5, 6, and 7)**

Defendant moves for summary judgment in its favor as to plaintiffs' claims related to post-sale conduct on the grounds that defendant conducted a safety recall that was sufficient to warn consumers of the dangers associated with their refrigerator product. (Doc. No. 162 at 14–16.) Defendant's arguments in support of its motion in this regard are largely conclusory. In opposition, plaintiffs argue that defendant was aware of a latent danger in its refrigerator product, failed to implement a specific recall remedy that prevented fires within the boiler tubes of that refrigerator, and that the failure to warn plaintiffs of this latent danger was a substantial factor in causing the fire at issue in this action. (Doc. No. 172 at 13–16.) In reply, defendant clarifies that its argument in moving for summary judgment as to these claims is made on the following grounds: (1) defendant's prior 2006 recall satisfies any post-sale duty of care that existed towards plaintiffs, even assuming plaintiffs did not receive notice of the recall when they purchased a refrigerator in 2019; and (2) plaintiffs have failed to provide any evidence that a post-sale failure to warn caused their injury. (Doc. No. 174 at 5–10.)

      1.      <u>Negligent Failure to Warn and Negligent Failure to Recall (Claims 4 and 6)</u>

"A failure-to-warn claim may be brought under either a theory of negligence or a theory of strict liability." *Lopez v. Johnson & Johnson*, 654 F. Supp. 3d 997, 1010 (C.D. Cal. 2023). "A claim for negligent failure to warn requires a plaintiff to prove that: '(1) the defendant manufactured, distributed, or sold the product; (2) the defendant knew or reasonably should have known that the product was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner; (3) the defendant knew or reasonably should have known that users would not realize the danger; (4) the defendant failed to adequately warn of the danger or instruct on the safe use of the product; (5) a reasonable manufacturer, distributor, or seller under the same or similar circumstances would have warned of the danger or instructed on the safe use of the product; (6) the plaintiff was harmed; and (7) the defendant's failure to warn or instruct was a substantial factor in causing the plaintiff's harm.'" *Lin v. Solta Med., Inc.*, 760 F. Supp. 3d 926, 936 (N.D. Cal. 2024) (quoting *Rosa v. City of Seaside*, 675 F. Supp. 2d 1006, 1011–12 (N.D. Cal.

7

2009), *aff'd sub nom. Rosa v. Taser Int'l, Inc.*, 684 F.3d 941 (9th Cir. 2012)).[4]  There is "considerable overlap" between failure-to-warn actions based in strict liability and failure-to-warn actions based in negligence, though the latter may provide a broader duty to warn in certain circumstances.  *Rosa*, 684 F.3d at 949.

Here, it appears that defendant contends that it was aware of some danger with the model of refrigerator which plaintiffs owned and had accordingly issued a recall notice in 2006 and provided a fix to mitigate the risk of fire.  (Doc. No. 174 at 5–6.)  In this regard, defendant argues that it did adequately warn of the danger posed by its refrigerators.  (*Id.*)  Specifically, in 2006 and 2008, defendant released two defect notifications.  (SDF at ¶ 13.)  These defect notifications recalled ten refrigerator models, totaling over 1.6 million refrigerator units.  (*Id.* at ¶¶ 13, 14.)  These defect notifications stated that the recalls were due to a potential safety issue stemming from the release of cooling solution near the boiler of those refrigerator models.  (*Id.* at ¶ 15.)  In 2006, Patrick McConnell, defendant's director of engineering, emailed an employee of NHTSA indicating that defendant believed it had identified a retrofit safety remedy to repair the defect identified in the recall notices.[5]  (Doc. No. 160-14; SDF at ¶ 19.)  Defendant attempted to notify consumers who owned RVs containing its refrigerator products by sending recall notices to any consumer who owned an RV sold by any company that defendant did business with.  (SDF at ¶ 36.)  Defendant represents that it cannot confirm whether all consumers received notices of the recalls.  (*Id.* at ¶ 37.)

---

[4]  A claim for negligent failure to recall or retrofit requires that a plaintiff show:  "(1) defendant manufactured/distributed/sold the product; (2) defendant knew or reasonably should have known that the product was dangerous when used in a reasonably foreseeable manner; (3) defendant became aware of this defect after the product was sold; (4) defendant failed to recall/retrofit; (5) that a reasonable manufacturer/distributor/seller under the same or similar circumstances would have recalled/retrofitted the product; (6) plaintiff was harmed; and (7) defendant's failure to recall/retrofit was a substantial factor in causing plaintiff's harm."  *M.G. v. Bodum USA, Inc.*, No. 19-cv-01069-JCS, 2021 WL 718839, at *22 (N.D. Cal. Feb. 24, 2021) (internal quotation marks omitted).

[5]  Plaintiffs dispute the efficacy of this safety remedy, but the court need not decide at this stage whether there is a genuine dispute of material fact regarding the efficacy of the safety remedy because whether or not it was effective is not relevant to plaintiffs' failure to warn claims.  (SDF at ¶ 19.)

8

Plaintiffs argue that defendant failed to provide adequate warning by not ensuring that the owners of the specific refrigerator which is the subject of this action were provided with notice. (Doc. No. 172 at 15–16.)  It is undisputed that plaintiffs themselves never received notice of the recalls.  (*Id.* at ¶ 40.)  Defendant and plaintiffs agree that it is unknown whether the original owner of the RV at issue in this case was provided with notice, though plaintiffs argue that the fact that the refrigerator was not retrofitted by defendant gives rise to a reasonable inference that the previous owners also did not receive notice.  (*Id.* at ¶¶ 40, 41; Doc. No. 174 at 6 n.4.)  "Whether [a] warning is adequate is usually a question of fact."  *Schwoerer v. Union Oil Co.*, 14 Cal. App. 4th 103, 111 (1993).

The court finds the reasoning in *Springmeyer v. Ford Motor Company* instructive in this regard:

> Since there was evidence from which the jury could find that Ford could have foreseen (and actually did foresee) that many owners, like Avis, would fail to respond to the recall, we concluded that the issue of superseding cause was correctly treated as [a] question of fact in this case.  As one commentator has noted, "[m]anufacturers are well aware that recall campaigns are disregarded . . . .  Such a well-known history of public disregard . . . makes it difficult, if not impossible, for the manufacturer in a subsequent suit to contend that he could not reasonably anticipate the continued use of the product."

60 Cal. App. 4th 1541, 1558–59 (1998) *as modified on denial of reh'g* (Feb. 26, 1998).  It is true that the California Court of Appeal in *Springmeyer* was addressing whether a reseller's failure to repair a recalled component is a superseding cause that shields the manufacturer from liability. Nonetheless, this court finds that the reasoning in *Springmeyer* also supports the contention that a reasonable jury could conclude that a manufacturer's awareness that a recall campaign was likely to be ignored and that the manufacturer failed to provide an adequate warning.  Indeed, California courts have repeatedly recognized that a jury can base a finding of negligence on the failure to conduct an adequate recall campaign.  *See, e.g., Hernandez v. Badger Constr. Equip. Co.*, 28 Cal. App. 4th 1791, 1827–28 (1994) ("Failure to conduct an adequate retrofit campaign may constitute negligence apart from the issue of defective design."); *see also Lunghi v. Clark Equip. Co.*, 153 Cal. App. 3d 485, 494 (1984) (finding that the jury could have found that the defendant was negligent in its duty to conduct an adequate retrofit campaign); *Balido v. Improved Machinery,*

*Inc.*, 29 Cal. App. 3d 633, 648 (1972) ("The infinite variety of factual situations arising out of corrective efforts highlights the factual nature of an inquiry as to whether the manufacturer has done what it could reasonably be expected to do to correct an earlier design deficiency. Central to the inquiry here is the question whether under the particular circumstances the manufacturer could have reasonably foreseen that the neglect of third persons to respond to the manufacturer's warnings of danger would frustrate its corrective efforts."); *Roberts v. Electrolux Home Prods., Inc.*, No. 12-cv-01644-CAS-VBK, 2013 WL 7753579, at *12 (C.D. Cal. Mar. 4, 2013) ("[O]ther California decisions confirm that California recognizes a common law duty to recall or retrofit even in the absence of an order from a government agency.").

Here, the court finds that there is a genuine dispute of material fact regarding whether defendant's recall efforts were adequate. There is no evidence before the court on summary judgment definitively indicating that the RV owner prior to plaintiffs received notice of the recall and, as noted above, it is undisputed that the refrigerator in plaintiffs' RV did not have the retrofit installed. *See Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 992 (N.D. Cal. 2014) (denying the defendant's motion for summary judgment on a negligent failure to warn claim because the parties did not adequately "develop the record" regarding the reasonableness of not including specific warnings); *see also Springmeyer*, 60 Cal. App. 4th at 1566 (noting that it was a question of fact for the jury whether, based on the efforts of the defendant manufacturer, it could be inferred that a specific repair vendor received notice of a recall); *cf. Temple v. Velcro USA, Inc.*, 148 Cal. App. 3d 1090, 1095 (1983) (holding that the plaintiffs could not contend that the notice procedures of a recall were negligently inadequate where the plaintiffs actually received the recall notice). Notably, at her deposition, Barbara Wagner, the recall supervisor of defendant, testified that as of October 6, 2009, only 37% of the total number of recalled refrigerators had rework kits installed in them. (Doc. No. 160-21 at 120–24.) A reasonable jury could infer from this low success rate of repairs that the recall campaign did not provide adequate notice and, accordingly, that defendant did not conduct an adequate recall campaign. Therefore, the court concludes that defendant has not met its burden on summary judgment of demonstrating that there is no genuine dispute of material fact as to the adequacy of its warning.

10

Defendant next argues that plaintiffs have not shown that there is a genuine dispute of material fact regarding whether any negligent failure to warn or recall caused plaintiffs' injury. (Doc. No. 174 at 9–10.)  Specifically, defendant contends that, even if a warning had reached plaintiffs' predecessors, it would not have changed plaintiffs' behavior.  (*Id.*)  "To prove causation, the plaintiff must prove that a failure to warn was a 'substantial factor' in causing the injury."  *Bueno v. Merck & Co.*, 746 F. Supp. 3d 853, 870 (S.D. Cal. 2024) (quoting *Himes v. Somatics, LLC*, 29 F.4th 1125, 1126 (9th Cir. 2022), *certified question answered,* 16 Cal. 5th 209 (2024)).  "'The natural corollary to this requirement is that a defendant is not liable to a plaintiff if the injury would have occurred even if the defendant had issued adequate warnings.'"  *M. G.*, 2021 WL 718839, at *21 (quoting *Huitt v. S. Cal. Gas Co.*, 188 Cal. App. 4th 1586, 1604 (2010)).  However, defendant's only argument in its original motion in this regard is that the evidence before the court on summary judgment establishes that the recall was adequate and accordingly plaintiffs' injuries could not have been caused by a failure to warn.  (Doc. No. 162 at 15) (arguing in general fashion that plaintiffs' claims fail because defendant adequately warned).  The court has already rejected this argument above.  To the extent that defendant argues that plaintiffs have failed to come forward with evidence demonstrating that the inadequacy of the recall was a substantial factor in their injuries, this argument was only raised in its reply brief.  (Doc. No. 174 at 9–10) (arguing for the first time that the failure to warn was not a substantial factor in

/////

/////

/////

/////

/////

/////

/////

/////

/////

/////

11

plaintiffs' injuries). Accordingly, the court will not consider that argument.[6] *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

Defendant's motion for summary judgment in its favor as to plaintiffs' fourth and sixth claims for negligent failure to warn and negligent failure to recall will therefore be denied.

2.    Negligence Per Se (Claim 5)

Defendant also moves for summary judgment as to plaintiffs' fifth claim for negligence *per se*. (Doc. No. 162 at 14–16.) Defendant raises the same arguments as to plaintiffs' negligence *per se* claim as it has in moving for summary judgment as to plaintiffs' negligent failure to warn claims. (Doc. No. 174 at 5–10.) Plaintiffs only argument as to how defendant violated a statutory duty is to contend that defendant was aware of the defect in its products in 2002 but did not initiate recalls until 2006, past the "five days" deadline created by certain federal regulations. (Doc. No. 172 at 16.)

"In California, the negligence per se doctrine is statutory: (a) The failure of a person to exercise due care is presumed if: (1) He violated a statute, ordinance or regulation of a public entity; [and] (2) The violation *proximately caused* death or injury to person or property; . . . ." *Jones v. Hernandez*, No. 16-cv-01986-W-WVG, 2018 WL 6018071, at *9 (S.D. Cal. Nov. 15,

---

[6] The court observes that a minimal showing is required under the substantial factor test to raise a genuine dispute of material fact as to causation. *Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953, 969 (1997), *as modified on denial of reh'g* (Oct. 22, 1997) ("The substantial factor standard, however, has been embraced as a clearer rule of causation—one which subsumes the 'but for' test while reaching beyond it to satisfactorily address other situations . . . . [T]he substantial factor standard [is] formulated to aid plaintiffs as a broader rule of causality than the 'but for' test."). Though plaintiffs do not argue in their opposition that they would not have purchased the RV had they known about the recall, nor provide declarations to that effect, plaintiffs did so allege in their FAC. (Doc. No. 40 at ¶ 105.) An affidavit by plaintiffs attesting that they would have acted differently had they been warned would be sufficient to raise a genuine dispute of material fact as to causation. *See, e.g., Chartis Specialty Ins. Co. v. Aqua Sciences Eng'rs, Inc.*, No. 11-cv-03669-JST, 2014 WL 2730442, at *6 (N.D. Cal. June 16, 2014) (discussing how the substantial factor element could be satisfied by demonstrating that the plaintiff would not have taken a deal if it had been warned). Though allegations in a complaint are insufficient to create a genuine dispute of material fact at summary judgment, *see Serafin v. Realmark Holdings, LLC*, 797 F. Supp. 3d 1075, 1078 (N.D. Cal. 2025), the court makes this observation to highlight how plaintiffs likely would have rebutted defendant's argument had it been raised, as required, in its motion for summary judgment.

2018) (emphasis added).  Even assuming the first element is satisfied here, plaintiffs have provided no argument nor come forward with any evidence explaining how a delay in initiating recalls proximately caused them to suffer an injury 13 years later.

Accordingly, the court will grant defendant's motion for summary judgment in its favor as to plaintiffs' fifth claim.

> 3.    Fraudulent Concealment (Claim 7)

Defendant next moves for summary judgment to be entered in its favor on plaintiffs' seventh claim for fraudulent concealment.  (Doc. No. 162 at 14–16.)  Defendant raises the same arguments as to plaintiffs' fraudulent concealment claim as it did in moving for summary judgment on plaintiffs' negligent failure to warn claims.  (Doc. No. 174 at 5–10.)  Plaintiffs appear to contend that defendant was aware of a widespread design defect which it actively concealed from "federal regulators and the public[.]"  (Doc. No. 172 at 16.)

"The elements of an action for fraud and deceit based on a concealment are:  (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Gilead Tenofovir Cases*, 98 Cal. App. 5th 911, 948 (2024), *as modified on denial of reh'g* (Feb. 1, 2024) (cleaned up).  At the hearing on defendant's pending motion, the court addressed plaintiffs' counsel as to what the purported concealed material fact was in this case.  (Doc. No. 184.)  Counsel responded that plaintiffs' theory was based on defendant failing to disclose the safety risk contained within its refrigerator prior to its 2006 recall.  However, even were plaintiffs able to establish that defendant had a duty to disclose the purported safety risk and failed to do so prior to its recalls, plaintiffs has provided no argument or evidence regarding how plaintiffs' injuries were caused by such an omission that purportedly took place over a decade earlier.  Accordingly, the court will grant defendant's motion for summary judgment on plaintiffs' claim for fraudulent concealment.

**B.      Claims Based Upon the Single Weld Design Testimony**

Defendant moves for summary judgment in its favor on all of plaintiffs' claims which rely upon evidence of the "Single Weld Design" defect in its refrigerators because this court previously excluded evidence of a general design defect in its June 25, 2025 order granting in part defendant's motion to exclude expert testimony pursuant to *Daubert*. (Doc. Nos. 158, 162 at 16–17.) Plaintiffs argue that they have provided evidence of two other design defects in defendant's refrigerators which they contend proximately caused the fire at issue in this case. (Doc. No. 172 at 18.) Plaintiffs also argue that the court did not exclude expert testimony regarding whether the purported Single Weld Design defect caused this particular fire. (*Id.*) Defendant argues that the court's order excludes all testimony regarding the Single Weld Design defect because expert testimony as to whether the design of defendant's refrigerators caused a particular fire must necessarily imply that the design is defective in all of defendant's refrigerators. (Doc. No. 174 at 10–11.)

Defendant misapprehends the effect of the court's prior order. In that order, the undersigned drew a distinction between the "common defect opinions" and the "particular defect opinion" offered by plaintiffs' experts. (Doc. No. 158 at 14, 24.) Indeed, the court noted that defendant had previously conceded that the particular defect opinion is separate and distinct from the common defect opinions. (*Id.* at 24 n.11.) The court then found that the experts' "experience as engineers allows them to testify regarding standard principles of engineering in the analysis of a design" but that this alone was not sufficient to opine that all of defendant's refrigerators contained a design defect that "would be the root cause of a fire in a random refrigerator unit." (*Id.* at 19–20.) Accordingly, the court excluded expert testimony regarding a common design defect in all of defendant's refrigerators. (*Id.* at 21.) Nevertheless, the court found that the experts, based on their analysis of plaintiffs' refrigerator, the analysis of the prior recalls of that refrigerator, and of the design of that refrigerator, could opine as to what caused the fire in plaintiffs' refrigerator. (*Id.* at 24–28.) Essentially, the court found that the experts could testify as to how the particular fire in this case was caused and that plaintiffs' refrigerator was defective. The experts, however, could not testify that all of defendant's refrigerators contained a defect that

14

had led to fires in other cases as a means of proving that plaintiffs' refrigerator in particular contained that defect and that the purported defect had caused the fire. This is in accordance with the decision in *M.G. v. Bodum USA, Inc.*, No. 19-cv-01069-JCS, 2021 WL 718839, at *15–17 (N.D. Cal. Feb. 24, 2021), where the district court held that an expert could testify regarding how the design of a product had led a particular unit of that product to fail and separately deferred ruling on whether evidence of other accidents was admissible on the separate question of whether defendant was on notice of that defect. *Cf. Siqueiros v. Gen. Motors LLC*, No. 16-cv-07244-EMC, 2022 WL 74182, at *7–8 (N.D. Cal. Jan. 7, 2022) (noting a distinction between an expert testifying that a certain piston ring defect was a cause of overconsumption of oil in a particular vehicle and testifying that all class vehicles contained the same defect which operated in the same manner in all class vehicles). Moreover, the court previously found that plaintiffs' experts had provided a basis for ruling out other causes of the fire and for concluding that the particular defect could have caused the fire at issue here. *Cf. Sonneveldt v. Mazda Motor of Am., Inc.*, No. 8:19-cv-01298-JLS-KES, 2023 WL 2292600, at *8–10 (C.D. Cal. Feb. 23, 2023) (excluding expert testimony regarding how a design defect caused four particular water pumps to fail where the expert failed to adequately explain the basis upon which he ruled out other possible causes of failure), *aff'd*, No. 23-55325, 2024 WL 5242611 (9th Cir. Dec. 30, 2024).

Accordingly, because defendant's motion is premised on the incorrect claim that the court excluded all expert testimony regarding how the Single Weld Design may have caused the fire in plaintiffs' refrigerator, the court will deny defendant's motion for summary judgment on all of plaintiffs' claims which rely upon evidence of the "Single Weld Design" defect in defendant's refrigerators.

**C.     Punitive Damages**

Defendant moves for summary judgment to be entered in its favor regarding plaintiffs' claims for punitive damages on the ground that plaintiffs have not provided "clear and convincing" evidence that defendant "has been guilty of oppression, fraud, or malice." (Doc. No. 162 at 17–19) (citing Cal. Civ. Code § 3294(a)). Specifically, defendant maintains that punitive damages cannot be supported where, as here, it previously conducted a recall. (*Id.*) Plaintiffs

15

argue that there is substantial evidence of oppression, fraud, and malice on the part of defendant because it had actual knowledge that its refrigerators were causing fires in 2002, when plaintiffs' refrigerator was manufactured.  (Doc. No. 172 at 21.)  Plaintiffs also argue that defendant developed actual knowledge of defects in its refrigerators in 2006 but failed to adequately recall those refrigerators.  (*Id.* at 23–24.)

"Under California law, punitive damages are available in a tort action 'where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice.'"  *Bookhamer v. Sunbeam Prods., Inc.*, 913 F. Supp. 2d 809, 819 (N.D. Cal. 2012) (quoting Cal. Civ. Code § 3924(a)).  California Civil Code § 3924 provides in relevant part:

> (1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.
>
> (2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.
>
> (3) "Fraud" means an intentional misrepresentation, deceit, or concealment of material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

Cal. Civ. Code § 3924(c).  Though plaintiffs state that the evidence demonstrates fraud, oppression, and malice on the part of defendant, their arguments in this regard are limited only to whether defendant showed a conscious disregard to the consequences of putting its refrigerator products into the stream of commerce.  (Doc. No. 172 at 20–24.)

"[T]o justify an award of punitive damages on the basis of a conscious disregard of the safety of others, the plaintiff must establish that the defendant was aware of the probable dangerous consequences of its conduct and that it willfully and deliberately failed to avoid those consequences."  *Hilliard v. A.H. Robins Co.*, 148 Cal. App. 3d 374, 395 (1983).  "Mere carelessness or ignorance does not justify punitive damages; rather there must be tortious conduct rising to the level of extreme indifference to the plaintiff's rights, a level which decent citizens should not have to tolerate."  *AMCO Ins. Co. v. Madera Quality Nut LLC*, No. 1:04-cv-06456-SMS, 2006 WL 2091944, at *39 (E.D. Cal. July 26, 2006).  "In ruling on punitive damages at

16

summary judgment, the court must take into account the higher clear and convincing evidentiary standard." *Brennan v. Johnson & Johnson*, No. 5:20-cv-01954-FWS-KK, 2022 WL 17219513, at *17 (C.D. Cal. Nov. 18, 2022).

Plaintiffs argue that defendant demonstrated conscious disregard of the safety hazards associated with their products first because it was aware in 2002 that its refrigerators were leaking and causing fires and second because it determined that the use of a different heater element would reduce the likelihood of fires and replaced that heater design in 2003.[7]  (Doc. No. 172 at 21–24.)  Defendant replies that there is no evidence before the court on summary judgment to indicate that it was aware of fires in its refrigerators or the cause of those fires prior to 2002. (Doc. No. 174 at 12.)  Defendant also argues that the heater change in 2003 occurred after plaintiffs' refrigerator was manufactured and sold in 2002 and therefore cannot serve as a basis for the award of punitive damages.  (*Id.* at 13.)

As to plaintiffs' first contention, defendant argues that plaintiffs have not provided evidence indicating when it became aware of fires in its refrigerators or that the cause was a purported defect.  (Doc. No. 174 at 12.)  Because of this, defendant argues that there is no genuine dispute of material fact as to whether it was aware of the purported defect at the time of the initial sale of plaintiffs' refrigerator in 2002.  (*Id.*)  Plaintiffs must demonstrate that there is such a genuine dispute of material facts for the court to determine that their claim for punitive damages survives on this basis.  *See Hilliard*, 148 Cal. App. 3d at 395, 397–98 (holding that an award of punitive damages requires evidence that the defendant was aware of the probable consequences of its conduct and willfully failed to avoid those consequences, and further finding that internal reports from the defendant's employees about the safety hazard of a product was sufficient to support an award of punitive damages); *see also Bookhamer*, 913 F. Supp. at 820–21

---

[7] Plaintiffs also make several conclusory arguments that defendant hired an expert in 2006 to test its refrigerators "for the sole purpose of proving that their leaking refrigerators could not cause a fire[] and therefore create a litigation defense to the fire claims they were receiving" and that it instructed the expert not to investigate certain aspects of the refrigerator design.  (Doc. No. 172 at 21–22.)  Plaintiffs cite no evidence to support these allegations.  Accordingly, the court finds that these assertions do not provide a basis on which to conclude there is a genuine dispute of material fact regarding defendant's conduct in testing its refrigerators.

(granting summary judgment in favor of the defendant where the plaintiffs failed to provide sufficient evidence that the defendant was aware that its products posed a danger to consumers); *see generally Graham v. Wal-Mart Stores, Inc.*, 2:14-cv-02916-MCE-CMK, 2017 WL 3783101, at *5 (E.D. Cal. Aug. 31, 2017) (denying the defendant's motion for summary judgment on the plaintiff's punitive damages claim because the plaintiff had adduced evidence that the defendant was aware that the product was defective before it sold the unit at issue to the plaintiff); *Pfeifer v. John Crane, Inc.*, 220 Cal. App. 4th 1270, 1300–02 (2013) (finding that the defendant was aware of the dangers of asbestos because of its compliance with OSHA regulations regarding that substance, that the defendant failed to issue warnings to customers of those dangers, and that this was sufficient to support an award of punitive damages), *as modified on denial of reh'g* (Nov. 27, 2013).

Plaintiffs argue that defendant was aware that its refrigerators were causing fires in 2002. (Doc. No. 172 at 21.)  In support of this contention, plaintiffs cite two depositions of Patrick McConnell, the corporate representative for defendant in this case, and one deposition of Sonya Kwon, an expert in a separate case who prepared a report for defendant regarding complaints that it had received about its refrigerators.[8]  (PDMF at ¶ 63; Doc. Nos. 178-2, 178-3, 178-10.)  Mr. McConnell testified that defendant possessed an access database of warranty claims and customer complaints related to its refrigerator products and that it received some number of complaints between 1997 and 2006.  (Doc. No. 178-2 at 6, 10.)  Mr. McConnell further testified that he could not personally estimate the number of claims received and stated that the appropriate way of determining how many claims were received and in what timeframe would be to refer to the access database.  (*Id.* at 11.)  Mr. McConnell testified in his other deposition that he "assume[d]" that defendant was aware of those claims as it received them.  (Doc. No. 178-3 at 6.)  Ms. Kwon

---

[8]  These other depositions were taken in an unrelated case. "Sworn deposition testimony may be used by or against a party on summary judgment regardless of whether the testimony was taken in a separate proceeding.  Such testimony is considered to be an affidavit pursuant to Federal Rule of Civil Procedure 56(c), and may be used against a party on summary judgment as long as the proffered depositions were made on personal knowledge and set forth facts that were admissible in evidence." *Gulf USA Corp. v. Fed. Ins. Co.*, 259 F.3d 1049, 1056 (9th Cir. 2001) (internal citation omitted).

testified that between 1997 and 2006, defendant received 1,195 claims regarding fires in its refrigerators.  (Doc. No. 178-10 at 5.)  However, the access database, examples of customer complaints, or any information regarding the timing of these fire claims were not attached to either defendant's motion for summary judgment nor plaintiffs' opposition and are therefore not before the court on summary judgment.

"[C]ourts have rejected undated customer complaints offered as a factual basis for a manufacturer's knowledge of a defect because they provide no indication whether the manufacturer was aware of the defect *at the time of sale*."  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) (emphasis in original).  Moreover, even were the court to assume without a basis that a substantial number of claims were raised prior to the sale of plaintiffs' refrigerator in 2002, this does not establish that defendant actually knew about the risks of its refrigerator products, particularly where there is no evidence before the court indicating that these fire claims were known by defendant to be verified and caused by a specific defect in its products.  *See Willis v. Buffalo Pumps Inc.*, No. 12-cv-00744-BTM-DHB, 2014 WL 1028437, at *6 (S.D. Cal. Mar. 17, 2014) (finding that the plaintiff's evidence that multiple general safety orders regulated asbestos dust supported a finding that the defendant should have known that its asbestos products were dangerous but did not establish at summary judgment that the defendant actually knew its products were dangerous); *Walter v. W. Indus. Inc.*, No. 13-cv-01503-JLS-AN, 2015 WL 12672741, at *3  (C.D. Cal. Feb. 25, 2015) (finding that the defendant met its burden of showing no genuine dispute of material fact with respect to its knowledge of a defect because, though it had received claims that its products had failed in the past, it had not found that those failures were a result of a defect).  Accordingly, the court concludes that plaintiffs' evidence in this regard is not sufficient to create a genuine issue of material fact as to whether defendant was aware at the time of sale of plaintiffs' refrigerator of defects in that refrigerator.

As to plaintiffs' second contention, defendant is correct that the inclusion in its refrigerators of a different heater design beginning in 2003 cannot provide the basis for a punitive damages claim in this action.  Put another way, defendant's actions in 2003 regarding replacement of the heating element is simply not evidence of what it purportedly knew in 2002

19

and cannot serve as a basis for punitive damages regarding the sale of plaintiffs' refrigerator. *See Willis*, 2014 WL 1028437, at *5 ("Only evidence of Defendant's knowledge and actions before and during Plaintiffs' alleged exposure to Defendants' products from 1966–68 is relevant for purposes of establishing punitive damages against Metalclad."); *see also Medo v. Super Ct.*, 205 Cal. App. 3d 64, 68 (1988) ("Punitive damages are not simply recoverable in the abstract.  They must be tied to oppression, fraud[,] or malice in the conduct which gave rise to liability in the case.") (emphasis removed); *Bookhamer*, 913 F. Supp. 2d at 820 (finding that evidence which suggested that the defendant was aware of fire risks caused by its product in the 1990s could not support punitive damages for the manufacture and sale of the product in the 1980s).

Plaintiffs argue in a conclusory fashion that, in light of the 2003 replacement of the heater, the 2006 recall's use of a safety remedy that did not involve replacing the heater element was "fraudulent." (Doc. No. 172 at 23.)  Though the court is dubious as to whether plaintiffs could establish a genuine issue of material fact regarding the efficacy of the 2006 safety remedy in light of its prior order excluding expert testimony on that subject (Doc. No. 158 at 21–22), the efficacy of the safety remedy is simply not at issue in this case because it is undisputed that plaintiffs' refrigerator was not retrofitted with that safety remedy.  (SDF at ¶ 41.)  Therefore, whether defendant was aware that its safety remedy was inadequate cannot establish that it acted with fraud, oppression, or malice as to plaintiffs because any inadequacy of the safety remedy did not cause their injuries.

Because defendant has shown that there is no genuine dispute of material fact as to whether it acted with fraud, malice, or oppression with respect to either of plaintiffs' theories for claiming punitive damages, the court will grant defendant's motion for summary judgment as to plaintiffs' request for punitive damages.

/////

/////

/////

/////

/////

20

**CONCLUSION**

1. Defendants' motion for partial summary judgment (Doc. No. 162) is GRANTED IN PART as follows:

   a. Summary judgment is granted in favor of defendant as to plaintiffs' negligence *per se* claim (Claim 5) and fraud by concealment claim (Claim 7);

   b. Summary judgment is granted in favor of defendant as to plaintiffs' claim for punitive damages;

   c. Defendant's motion is otherwise DENIED; and

2. The parties are directed to meet and confer on their availability, and within fourteen (14) days of the docketing of this order, to contact Courtroom Deputy Pete Buzo at (916) 930-4016 or pbuzo@caed.uscourts.gov with several proposed dates for the rescheduling of a Final Pretrial Conference and Jury Trial in this action.

IT IS SO ORDERED.

Dated:   **March 30, 2026**                    _____

                                              DALE A. DROZD
                                              UNITED STATES DISTRICT JUDGE

21